**In re SEARCH WARRANT DATED JULY 4, 1977, FOR PREMISES AT 2125 S STREET, NORTHWEST WASHINGTON, D.C.**

No. 77–1793.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1977.

Decided Dec. 1, 1977.

As Amended Dec. 8 and 13, 1977.

Rehearing En Banc Denied Jan. 4, 1978.

As Amended Jan. 9, 1978.

Certiorari denied March 20, 1978, See 98 S.Ct. 1491.

Circuit Judge, filed a statement as to why he did not request a vote on the suggestion for rehearing en banc.

Spottswood W. Robinson, III, Circuit Judge, with whom McGowan, Circuit Judge, concurred, filed a statement as to why he did not request a vote on the suggestion for rehearing en banc.

J. Skelly Wright, Circuit Judge, joined by Bazelon, Chief Judge, and Leventhal,

Hamilton P. Fox, III, Atty., Dept. of Justice, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Carl S. Rauh, Principal Asst. U. S. Atty., Henry F. Schuelke, III, Executive Asst. U. S. Atty., John A. Terry, Brian Shaughnessy, Raymond Banoun, and Judith Hetherton, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Philip J. Hirschkop, Alexandria, Va., with whom John D. Grad and Earl Dudley, Alexandria, Va., were on the brief, for appellee.

Before MacKINNON and ROBB, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court Per Curiam.

PER CURIAM:

Following a search and seizure by the Government of numerous documents pursuant to a search warrant, on motions of the Church of Scientology, the trial court granted (1) a protective order against the use by the Government of certain of the documents in certain civil litigation between the parties, and (2) ordered the return of the property seized. The latter order which directed the return of the seized property was construed by the court to involve "[i]n effect . . . a motion to suppress" (Appellant's Appendix, 5) and on that basis the Government has appealed therefrom under 18 U.S.C. § 3731.[1] The

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. 18 U.S.C. § 3731 (1970) provides:

    \* \* \* \* \* \*

    An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

statute directs such appeals to be diligently prosecuted, and pending grand jury proceedings are being held in abeyance awaiting the decision on this appeal. Accordingly, we have expedited the argument on the appeal and our decision as well.

In our view of the controversy, the validity of the order of the District Court directing the return of the seized property turns on a single issue, i. e., whether the trial court was correct when it construed the search warrant to be a "general warrant" prohibited by the Constitution.

The principal issue in this case thus turns on whether the warrant is overbroad and constitutes a general warrant because of the reference to the crime of "conspiracy" as set forth in item 162 of the affidavit for the search warrant (App. 32–76), and in the search warrant (App. 22–31). The search warrant in designating the "concealed certain property" that the "Federal Bureau of Investigation" was "commanded to search . . . and seize" stated "(See attached Description of property)." The attachment entitled *Description of Property* consisted of 7½ typewritten pages (App. 33–40) which very specifically described and designated a great many items to be seized if found on the designated premises. There were 162 separately enumerated items so described. In most instances each item referred to a document on a single subject specified by type, date, subject and other relevant data such as the author or addressee. A few items were stated more broadly, but generally none of the first 161 items, except item 155, is attacked for any alleged lack of specificity or particularity. The "Description" incorporated the extensive affidavit attached to the affidavit for the Search Warrant. It is item 162 that is the principal subject of attack by the appellee and which furnished the principal basis for the ruling by the trial court. As set forth in the Search Warrant, item 162 appears in the following context:

. . . there is now being concealed certain property, namely

(See attached Description of Property) (App. 22).

DESCRIPTION OF PROPERTY

\*     \*     \*     \*     \*     \*

162. Any and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of conspiracy, obstruction of justice and theft of government porperty [sic] in violation of 18 U.S. Code §§ 371, 1503 and 641 *which facts recited in the accompanying affidavit make out.*

(App. 31, emphasis added).

The reference in the search warrant to the "accompanying affidavit" incorporated the 33-page "Affidavit in Support of Search Warrant" (App. 42–74) that was attached to the "Description of Property" (App. 33–41), all of which was appended to the regular "Affidavit for Search Warrant," Form A.O. 106 (Rev.Apr.1973) (App. 12). The affidavit was executed by Robert Tittle, Special Agent, Federal Bureau of Investigation.

The trial court in its Memorandum construed item 162 and stated:

I hold that the grant of authority [by item 162] to the agents to search for and seize any evidence of conspiracies to steal government property and to obstruct justice amounted to a "general warrant" and therefore contravened the Fourth Amendment's guarantee against unreasonable searches and seizures. I am not persuaded that the Supreme Court's recent decision in *Andresen v. Maryland*, 427 U.S. 463 [96 S.Ct. 2737, 49 L.Ed.2d 627] (1976), is to the contrary.

(App. 6).

█ In reaching such conclusion we find that the district court gave an overbroad

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

\*     \*     \*     \*     \*     \*

The provisions of this section shall be liberally construed to effectuate its purposes.

construction to the search warrant, improperly interpreted the relevant offenses, ignored a significant part of item 162, and gave an unduly restrictive interpretation to the Supreme Court decision in *Andresen v. Maryland, supra.*

First, as to the overbroad construction of the search warrant: as stated in its holding, set forth above, the district court held that the search warrant granted "authority to the agents to search for and seize *any* evidence of conspiracies to steal government property and to obstruct justice . . . ." Such construction is patently incorrect. It ignores completely the following language which limits the breadth of item 162: ". . . *which facts recited in the accompanying affidavit make out.*" (App. 31, emphasis added). The recited facts and designations of property and offenses impose particular limits upon the search warrant and that was the purpose of the italicized statement. This, the trial court did not consider. Properly construed, the warrant only authorizes a search and seizure of evidence of the particular conspiracies to steal government property and to obstruct justice that are described in the "accompanying affidavit."

Without exhaustively describing these conspiracies and offenses, and the relevant "fruits, instrumentalities and evidence" (App. 31, 40) thereof that are described and particularized in the "Description of Property" and the "accompanying affidavit," the conspiratorial and obstruction offenses that may be the subject of the authorized search and seizure, because they are designated and particularized in the affidavit and search warrant, are the following: (1) Conspiracy to steal government property from: (a) the office of the United States Attorney in the U.S. Court House, Washington, D.C., and more particularly from the office of "Assistant United States Attorney Nathan Dodell" (App. 41, 52); (b) the office of Staff Attorney Paul Figley, Department of Justice, Washington, D.C.

(App. 41, 48, 50); (c) the Internal Revenue Service (identification cards) (App. 42) and possibly other documents; and (d) by unlawfully breaking and entering such offices and the offices of Interpol maintained in the U.S. Treasury Department in Washington, D.C. (App. 49). (2) Conspiracy to obstruct justice: (a) by illegally obtaining from opposing parties in litigation "documents relating to Scientology-instituted Freedom of Information Act suits against, *inter alia,* the Central Intelligence Agency, the Drug Enforcement Administration, [the U.S.] Customs [Service], Interpol and the Defense Communications Agency" (App. 50); (b) by engaging in illegal eavesdropping (App. 46); (c) by perjury and subornation of perjury committed, *inter alia,* by Henning Heldt, Greg Willardson, Duke Snider, Michael James Meisner, Richard Weigand, Gerald Bennett Wolfe (App. 57–61) and others;[2] most of whom occupy managerial positions with the Church of Scientology in Washington, D.C. and Los Angeles, California (App. 75, 76).

The allegations referred to above, in connection with the *conspiracy* offenses, also include allegations of facts which particularize the specific *substantive* offenses of theft of government property (18 U.S.C. § 641) and obstruction of justice (18 U.S.C. § 1503).

In addition to all the foregoing, a separate part of the affidavit for the search warrant, extending over 11 typewritten pages, is devoted to setting forth in particular detail the *"Nature and Location of Document Files Maintained by the Church of Scientology"* (App. 63–73). This part of the supporting affidavit names names, describes documents, gives dates, describes their contents, and indicates where in the organization's offices they might be found. It also describes their size, the titles under which they might be found in the files, the extent of the relevant files, the meaning of certain titles, such as "program files" (App. 64), "operations (files)" (App. 64), "govern-

---

2. Anyone who aids, abets, counsels, commands, induces, procures or wilfully causes another to commit an offense in violation of any U.S. statute is guilty as a principal of the crime so committed. 18 U.S.C. § 2 (1970).

ment special bank" (App. 64), and that "two file systems [are maintained] consisting of covertly and overtly obtained documents" (App. 64). Of particular importance is the particular reference to the "confidential file of the Deputy Guardian for Information (U.S.) [of the Church of Scientology]" which allegedly contains "reports written by the [U.S.] Central Intelligence Agency in South America (in particular Ecuador and Bolivia) concerning Interpol agents believed to be involved in drug dealings" (App. 65). Some of the documents which were particularized "included some programs directed against government agencies" (App. 65). The files and filing system at the office designated in the search warrant "2125 S Street N.W., Washington, D.C." were also described and particularized (App. 72).

A significant part of the affidavit also particularizes the stolen documents by specifying their source and the subject matter to which they relate:

### SOURCE OF DOCUMENTS

Items 1–99 lists documents stolen (and copied) from the office of Assistant United States Attorney Nathan Dodell, United States Attorney's Office for the District of Columbia.

Items 100–148 lists documents stolen (and copied) from the office of Staff Attorney Paul Figley, Department of Justice, Washington, D.C.

Items 100–122 are documents relating to the case of *Church of Scientology of California v. United States Department of Justice*, CV 74–3550–F.

Items 123–127 are documents relating to the case of *Church of Scientology of California v. Kelly*, Civil Action 74–906.

Items 128–130 are documents relating to the case of *Church of Scientology of California v. Postal Service*, Civil Action 75–2004–R.

Items 131–132 are documents relating to the case of *Church of Scientology of California v. State Department*, Civil Action 75–2832 AAH.

Items 133–134 are documents relating to the case of *Church of Scientology of California v. Alcohol, Tobacco and Firearms*, Civil Action 75–1699 RFP.

Items 135–136 are documents relating to the case of *Church of Scientology of California v. Department of State*, Civil Action 75–2562E.

Item 137 is a document relating to the case of *Church of Scientology of California v. Department of Transportation*, Civil Action No. 75–3482.

Items 138–147 are documents relating to the case of *Church of Scientology of California v. Energy Research and Development Administration*, Civil Action No. 76–11R.

(App. 41).

The last paragraph of the affidavit makes further specific reference to "the crimes . . . which facts recited in the accompanying affidavit make out . . ." (App. 31, 40).

Based on the foregoing, affiant submits that there is probable cause to believe that, from 1974 through 1976, officials of the Church of Scientology in Los Angeles, California and in Washington, D.C., conspired to steal documents from the Government of the United States by means of the burglary of U.S. Government offices and theft by operatives of the Church in the employ of the U.S. Government; that documents belonging to the United States Government were stolen pursuant to that conspiracy; that copies of such stolen documents are secreted in the files of the Church of Scientology in Los Angeles, California, and Washington, D.C.; that subsequent to the confrontation between Messrs. Meisner and Wolfe and agents of the F.B.I. on June 11, 1976, officials of the Church of Scientology conspired to obstruct justice by preparing a false response to expected inquiries of Meisner and Wolfe by law enforcement authorities and federal grand juries; that plans, scenarios and directives were committed to writing in furtherance of this conspiracy; that such writings are secreted in the files of the Church of Scientology in Los Angles, California, and Washington, D.C.; that the objects of this latter conspiracy were met

in part before a Grand Jury of the United States District Court for the District of Columbia on June 10, 1977; that, thereafter a summary of Wolfe's Grand Jury testimony was prepared by him in furtherance of the objectives of this latter conspiracy; and that copies of that summary are secreted in the offices of the Church of Scientology in Los Angeles, California, and Washington, D.C. (Appellant's App. 73.)

■ It is apparent from the "Memorandum and Order" of the trial court that it interpreted the reference in the search warrant to "conspiracies" to refer to "conspiracies to steal government property and to obstruct justice" (Appellant's App. 6). We agree. However, we strongly disagree with the statement that the affidavit and search warrant were therefore general and not sufficiently particularized to pass constitutional muster. As outlined briefly above, the supporting documents went into great particularity not only as to the relevant documents and their location but also as to the particular offenses that the property sought was designed to prove. These offenses are not "amorphous"—they are specific, particularized and according to the affidavit supported by reams of hard documentary evidence as well as by sworn statements of some of the alleged conspirators and principals in the conspiracy and substantive offenses.

■ We agree with the District Court that the searches and seizures can only be conducted after a showing of

> . . . probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched and the person or things to be seized.

U.S. Const. amend. IV. However, we agree with the finding of the United States Magistrate that the affidavit did show probable cause and described the "place to be searched and the . . . things to be seized" with the required particularity. The trial court Memorandum admits: "To be sure, the affidavit provided the agents with substantial guidance as to what to look for" (App. 17), but it gets off the track

when it concludes: "For there is nothing 'particular' about conspiracy" (App. 15). In the context of *this* search warrant and the conspiracies it refers to, this is an erroneous conclusion—the two conspiracies here specified were described in great particularity. *See* text, *supra.* We thus do not agree with the further findings of the trial court that the warrant "[permitted] seizure of anything at all" (App. 17), and "invited the agents to seize any document in the Church's files that struck their fancy" (App. 9).

■ The trial court also finds the warrant to be overbroad because:

> As a practical matter [it constitutes] . . . a directive to seize "evidence at this time unknown" of conspiracy [which amounts to] . . . a "wild card" permitting seizure of anything at all.

(App. 17). This, however, is an overbroad interpretation of the warrant. The warrant, in item 162, only authorizes

> Any and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of conspiracy, obstruction and theft of government property . . . *which facts recited in the accompanying affidavit make out.*

(App. 31). Thus, as pointed out in the forepart of this opinion, the italicized language imposes a very great degree of particularity and specificity to all the offenses described and to the evidence, fruits, and instrumentalities that may be seized. But the important feature about the questioned language in item 162 is that it follows identically the language which the Supreme Court in *Andresen v. Maryland, supra* found was not overbroad in the context of the offenses there designated. Precisely, *Andresen* holds that the warrant did not become "fatally general because it followed an exhaustive list of particularly described documents with the phrase 'together with other fruits, instrumentalities and evidence of crimes at this [time] unknown.'" 427 U.S. at 479, 96 S.Ct. at 2748.

A cursory comparison indicates that the questioned language here is more precise than that in *Andresen*, in that it is limited

by the facts concerning the offenses which are made out by the recitations in the accompanying affidavit. Also, the offenses here described do not suffer in comparison with the offense concerning the crime of false pretenses surrounding "Lot 13T" that was involved in *Andresen*. In that decision the search was upheld for evidence of "intent to defraud and knowledge of [the] falsity" of the allegedly false representations. 427 U.S. at 483, 96 S.Ct. at 2749. The limitation of the present warrant to the designated crimes "which facts recited in the accompanying affidavit make out" is every bit if not more specific and particularized than the warrant in *Andresen*.

A further question is raised as to item 155. Item 156 should also probably be included. These items provide:

155. A Guardian Order generally identified as "Snow White".

156. Any and all Guardian Orders issued pursuant to the Guardian Order generally identified as "Snow White" which would be identified by the mention of "Snow White".

(App. 39). These may be referred to as the "Snow White" files. In connection therewith, on this appeal, the Church contended at oral argument:

This warrant, if it's upheld by the court [on its Snow White items] authorized the FBI to seize all of the legal files of the Church of Scientology, all of its litigation files, all of its correspondence to counsel, all of its pleadings, all of its proposed pleadings, all of its records.

In this connection, the warrant should not be construed that broadly. While the warrant may have supported a claim to examine the "Snow White" file but not necessarily to seize its entire contents, just as a warrant to search a house for a murderer would not authorize seizing the contents of the house, the Government cannot retain "all the legal files of the Church of Scientology" but only those in the "Snow White" category that constitute the particularized "Guardian Orders," possibly including general orders in the "Snow White" phase of the Church's operations, and material in such files that constitute "fruits, instrumentalities and evidence . . . of the [stated] crimes . . . which facts recited in the accompanying affidavit make out." (App. 39–40).[3] If any of the documents seized in the search by the agents exceed the bounds of the search warrant they should be returned, but the "fruits, instrumentalities and evidence" that were seized, and that are relevant to the particularized offenses and which are specifically referred to in the affidavit and search warrant, should be delivered to the government forthwith for use in connection with the grand jury proceedings. Our order herein does not restrict the right of the court to consider and determine whether any specific document may have been seized outside the authority of the search warrant as construed in this opinion.

On the authority of *Andresen v. Maryland*, 427 U.S. 463, 478–484, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), we hold that

3. We do not find any of the cases cited by counsel in his letter of November 16, 1977 to be contrary to the above holding. *United States v. Katz*, 238 F.Supp. 689, 695 (S.D.N.Y.1965) ordered the return of an automobile that the government sought to forfeit and retain as evidence. The court found that no "evidentiary" reason had been shown for requiring the retention of the auto and that it had not supported its forfeiture claim. The court also denied the motion to suppress evidentiary use of other evidence seized in the search. This supports the conclusion we reach that some seized material may be retained while other material may not be retained. *United States v. Bell*, 120 F.Supp. 670 (D.D.C.1954), also involved a forfeiture and was decided on procedural grounds.

As for *Green v. United States*, 386 F.2d 953, 956 (headnote 5) (10th Cir. 1967), and *Goodman v. United States*, 369 F.2d 166, 168 (9th Cir. 1966), neither are relevant to our disposition of the case. As for the citation to Wright, Federal Practice and Procedure, Criminal at 676, the citation is generally irrelevant, but it does point out that when a motion to suppress is granted, normally the "property must be returned" but not where the property is "otherwise subject to lawful detention." This would negate that part of the court's order that directed the return to the Church of stolen government property or material that had been improperly copied from government documents. Certainly such material is "subject to detention" by the Government.

the search warrant in this case is not a general warrant and is valid. The order requiring the return of the property is thus vacated.[4]

*Order accordingly.*

## JUDGMENT

This cause came to be heard on the record on appeal from the order of the United States District Court for the District of Columbia and was argued by counsel. On consideration of the foregoing, for reasons which appear in the attached *per curiam* opinion, it appears to the Court that the warrant for the search of the premises at 2125 S Street, Northwest, Washington, D.C. dated July 4, 1977 is indistinguishable in practical effect from the warrant upheld by the Supreme Court in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); that the warrant states with sufficient particularity the things to be seized; that Item 162 of this warrant does not render the warrant a general warrant within the meaning of the Fourth Amendment; and that the warrant does not leave to the executing officers impermissible discretion; it is therefore

ORDERED by this Court that the July 27, 1977 decision of the United States District Court for the District of Columbia that the warrant in this case is a general warrant in contravention of the Fourth Amendment and therefore invalid is reversed; and, it is

4. The search warrant is clearly limited to a search for evidence relating to the crimes of theft of government property, obstruction of justice, and a conspiracy to commit such crimes. There is nothing in the nature of the crime of conspiracy as proscribed by 18 U.S.C. § 371 that prevents a magistrate from issuing a search warrant to seize evidence that such crime has been committed. In fact, conspiratorial crimes are conducted with more secrecy than many other crimes, and search warrants that seek evidence of conspiracy, and otherwise meet the required standards, may extend to all relevant evidence of that crime. Otherwise, alleged conspirators would occupy a special protection from prosecution that is not available to other accused persons. The same may be said of search warrants seeking rele-

FURTHER ORDERED by the Court that the July 27, 1977 order of the District Court is vacated in its entirety; and, it is

FURTHER ORDERED by the Court that the case is remanded to the District Court for consideration of the other grounds alleged for invalidating the warrant not considered by the District Court, specifically, that the search was conducted in a manner that constituted a violation of the Fourth Amendment, that the agents employed unnecessary force in violation of 18 U.S.C. § 3109; and that the warrant was stale.

Supplemental Opinions on Suggestion for Rehearing En Banc

(D.C.Misc. 77–0151)

Before BAZELON, Chief Judge; WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ORDER

The suggestion for rehearing *en banc* filed by appellee Founding Church of Scientology, having been transmitted to the full Court and no Judge having requested a vote with respect thereto, it is

ORDERED by the Court *en banc* that appellee's aforesaid suggestion for rehearing *en banc* is denied.

Statement of Circuit Judge WRIGHT, in which Chief Judge BAZELON and Circuit Judge LEVENTHAL Join, as to Why He Does not Request a Vote on the Suggestion for Rehearing *En Banc*, is attached.

vant evidence of obstruction of justice. Neither of these offenses possess any special immunity that would protect them from being ferreted out by proper search warrants seeking relevant evidence. While these offenses may have certain subjective elements, like the criminal intent in *Andresen v. Maryland, supra,* the evidence that proves such subjective elements may be objective, tangible and constitute clear proof. This appears to be a case where, if the documents described and particularized in the affidavit and search warrant, live up to their description, the crimes of conspiracy to steal government property and to obstruct justice and such substantive offenses, would be practically proved, amorphous intent and all, merely by introducing the documents themselves with testimony as to where they were found.

Statement of Circuit Judge ROBINSON, with whom Circuit Judge McGOWAN Concurs, as to Why He Does not Request a Vote on the Suggestion for Rehearing *En Banc*, is attached.

Statement of Circuit Judge WRIGHT, in Which Chief Judge BAZELON and Circuit Judge LEVENTHAL Join, as to Why He Does not Request a Vote on the Suggestion for Rehearing *En Banc*

J. SKELLY WRIGHT, Circuit Judge:

In its most recent case considering the constitutionality of a search warrant the Supreme Court stated:

> General warrants, of course, are prohibited by the Fourth Amendment. "[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a 'particular description' of the things to be seized." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971). This requirement " 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. *As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.*' " *Stanford v. Texas*, 379 U.S. 476, 485, [85 S.Ct. 506, 512, 13 L.Ed.2d 431] (1965), quoting *Marron v. United States*, 275 U.S., at 196.

*Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (emphasis added). The search warrant which the panel of this court upheld in this case directed the seizure of

> [a]ny and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of conspiracy, obstruction of jus-

tice and theft of governmental [property] in violation of 18 U.S.C. §§ 371, 1503 and 641 which facts recited in the accompanying affidavit make out.

Appellant's Appendix at 40.

The panel here predicated its decision upholding the warrant squarely on the Supreme Court's opinion in *Andresen*. Thus the question presented in this case is whether "nothing [was] left to the discretion of the officer executing the warrant." Since it is clear that the parties will ask the Supreme Court to review whatever is decided at this level in this case, in the interest of reducing unnecessary delay in this litigation, I think the case should now be passed on to the Supreme Court.

STATEMENT OF CIRCUIT JUDGE ROBINSON, WITH WHOM CIRCUIT JUDGE McGOWAN CONCURS, AS TO WHY HE DOES NOT REQUEST A VOTE ON THE SUGGESTION FOR REHEARING EN BANC

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The warrant under scrutiny directed seizure of 161 designated items and of

> [a]ny and all fruits, instrumentalities, and evidence (at this time unknown) of the crimes of conspiracy, obstruction of justice and theft of governmental [property] in violation of 18 U.S.C. §§ 371, 1503 and 641 which facts recited in the accompanying affidavit make out.[1]

The District Court, denominating the latter call "a 'wild card' permitting seizure of anything at all," [2] reasoned that it communicated to executing officers permission to search for and seize anything arguably related to any and all violations of the three enumerated statutes [3] and thus was tanta-

---

1. Appellant's Appendix 40, quoted in *In re Search Warrant Dated July 4, 1977*, at —— of 187 U.S.App.D.C., at 323 of 572 F.2d.

2. *In re Search Warrant Dated July 4, 1977*, 436 F.Supp. 689, 698 (D.D.C.1977).

3. *Id.* at 694, 697. See also *United States v. Burch*, 432 F.Supp. 961, 963 (D.Del.1977). The District Court explained:

> The warrant in this case authorized—if indeed it did not direct—agents of the FBI to examine carefully and completely the contents of every document in the fourth floor files of the Church and to make ad hoc, on-the-spot decisions as to which of those documents constitute evidence of conspiracy—an amorphous and open-ended crime that, as discussed below, has since its con-

mount to an unconstitutional general warrant.[4] The panel, on the other hand, read the warrant as reasonably instructing officers to search only for evidence of seven specific criminal incidents alleged in the affidavit.[5] Thus construed, the warrant in the panel's view was adequately particularized, as judged by the standards of the Supreme Court's recent decision in *Andresen v. Maryland*.[6]

Whether the panel correctly appraised a prudent officer's understanding of the language of this warrant is surely not an issue rising to *en banc* caliber.[7] And though the panel's opinion is not entirely clear, I do not view it as a negation of the time-honored principle that the pivotal question is not whether a court in hindsight *can* find in the warrant a curb on the power to search but rather whether at the time of execution an officer reasonably and likely would take the

warrant as authority for unbridled rummaging.[8] Nor is it argued that the magistrate reasonably could have defined the items subject to seizure with greater particularity and thus have "minimize[d] unwarranted intrusions upon privacy."[9] Therefore, because the panel opinion rests squarely upon its quasi-factual interpretation of the total context of this warrant, I think rehearing *en banc* would be unjustified. The mere inclusion in future warrants of language that in isolation is similar or identical to that under review in this case would not necessarily immunize those warrants from challenges that they authorized overbroad searches.

ceptual inception perplexed commentators and courts alike. In my view this warrant—addressed as it is to the crime of conspiracy—invited the agents to seize any documents in the Church's files that struck their fancy.
436 F.Supp. at 694.

4. The Fourth Amendment provides in part that "no warrant shall issue" unless "particularly describing the place to be searched, and the person or things to be seized."

5. *In re Search Warrant Dated July 4, 1977, supra* note 1, at —————— of 187 U.S.App. D.C., at 323–324 of 572 F.2d. The panel concluded that the authorization in this warrant is nearly identical to that approved by the Supreme Court in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). *In re Search Warrant* dated July 4, 1977, *supra* note 1, at —— of 187 U.S.App.D.C., at 326 of 572 F.2d. The District Court, however, felt that in context the challenged language, though similar, likely conveyed a different message. See note 3 *supra*.

6. See note 5 *supra*.

7. See Fed.R.App.P. 35(a).

8. *Andresen v. Maryland, supra* note 5, 427 U.S. at 493, 96 S.Ct. at 2754, 49 L.Ed.2d at 650 (Brennan J., dissenting); see *id*. at 480–481, 96 S.Ct. at 2748, 49 L.Ed.2d at 642 (majority opinion), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) (one of two main objectives of the Fourth Amendment warrant requirement is

to assure that "searches deemed necessary should be as limited as possible," and the warrant achieves that goal only by directing executing officers to the particular things to be seized), and quoting also *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431, 437 (1965), in turn quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927) ("[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another"; "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant"). See also *United States v. United States District Court (Keith)*, 407 U.S. 297, 316, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752, 765 (1972), quoting *Leach v. Three of King's Messengers*, 19 How.St.Tr. 1001, 1027 (1765) (" '[i]t is not fit,' said Mansfield, 'that the receiving or judging of information should be left to the discretion of the officer. The magistrate ought to judge and should give certain directions to the officer.' ").

Thus, it is not enough that the parameters the magistrate intends to place on the scope of the search would bring it within constitutional bounds. Nor is it enough that a reviewing court is able to read the warrant as not necessarily chartering an impermissible search. The executing officers themselves must know at the outset how far they are licensed to go in their pursuit of evidence.

9. *Andresen v. Maryland, supra* note 5, 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11, 49 L.Ed.2d at 643 n. 11.