In the Matter of the Application of **LAFAYETTE ACADEMY, INC., et al, Appellees,**

**Appeal of UNITED STATES of America, Appellant.**

**No. 79–1123.**

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1979.

Decided Oct. 29, 1979.

**2**

Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., with whom Paul F. Murray, U.S. Atty., Providence, R.I., and Franklin C. Phifer, Jr., Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant.

Peter J. Mansbach, New York City, with whom Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Herbert F. DeSimone, and DeSimone, Del Sesto & Del Sesto, Providence, R.I., were on brief, for appellees.

Before KUNZIG,* Judge U.S. Court of Claims, CAMPBELL, Circuit Judge, and DOOLING,** District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The government appeals from the district court's allowance of appellees' motions, filed pursuant to Fed.R.Crim.P. 41(e),[1] for

---

* Sitting by designation.

** Of the Eastern District of New York, sitting by designation.

1. Fed.R.Crim.P. 41(e) provides:
 "(e) *Motion For Return Of Property.*
 A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized

for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on

return of property. We affirm the judgment of the district court.

Appellee Lafayette Academy, Inc. owns and operates a vocational home-study school which participated in the Federal Insured Student Loan Program (FISLP). Lafayette Academy and its two subsidiaries[2] came under investigation for possible fraudulent practices in connection with their participation in FISLP. The investigating officer by affidavit set forth the observations, information, and conclusions of various officials of the Department of Health, Education and Welfare, the Office of Education, and former employees of Lafayette Academy as well as his own with respect to Lafayette's irregular practices in recordkeeping and violations of federal regulations respecting the student loan program. Based upon his affidavit, a warrant issued authorizing the seizure of

> "books, papers, rosters of students, letters, correspondence, documents, memoranda, contracts, agreements, ledgers, worksheets, books of account, student files, file jackets and contents, computer tapes/discs, computer operation manuals, computer tape logs, computer tape layouts, computer tape printouts, Office of Education (HEW) documents and forms, cancellation reports and directives, reinstatement reports or forms, Government loan registers, refund ledgers, reports and notes, administrative reports, financial data cards, lesson and grading cards and registers, registration (corporations) documents, student collection reports, financial documents (corporations), journals of accounts and student survey data, which are and constitute evidence of the commission of violations of the laws of the

United States, that is violations of 18 U.S.C., Sections 286, 287, 371, 1001 and 1014; . . ."

from appellees' place of business. The warrant was executed the next day by approximately thirty government agents who seized a substantial percentage of the records on the searched premises, employing four or five trucks to remove the seized material.

 We hold with the district court that the warrant does not describe the "things to be seized" with the particularity required by the fourth amendment.[3] The warrant is framed to allow seizure of most every sort of book or paper at the described premises, limited only by the qualification that the seized item be evidence of violations of "the laws of the United States, that is violations of 18 U.S.C. Sections 286, 287, 371, 1001, and 1014." The cited statutes, however, penalize a very wide range of frauds and conspiracies. They are not limited to frauds pertaining to FISLP, and there is no indication from the warrant that the violations of federal law as to which evidence is being sought stem only or indeed at all from Lafayette's participation in FISLP. Thus, the warrant purports to authorize not just a search and seizure of FISLP-related records as the government contends but a general rummaging for evidence of any type of federal conspiracy or fraud. Here, at a minimum, the precise nature of the fraud and conspiracy offenses for evidence of which the search was authorized—fraud and conspiracy in the FISLP—needed to be stated in order to delimit the broad categories of documentary material and thus to meet the particularity require-

for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."

2. Appellee Lafayette Motivation Media, Inc., which engages in sales, marketing, and related services for Lafayette Academy's vocational home-study program, and appellee Educational Lending Corp., which finances tuition loans, are wholly owned subsidiaries of Lafayette Academy. Other appellees are Lafayette Unit-

ed Corporation, Glick Enterprises, Inc., and Jewelry By St. Tropez, Inc., which shared office space with the other appellees at the site of the search and seizure.

3. The fourth amendment states, in material part:

"[N]o Warrants shall issue, but upon probable cause . . . and particularly describing . . . the . . . *things to be seized*."

ment of the fourth amendment.[4] *Compare In Re Search Warrant*, 187 U.S.App.D.C. 297, 572 F.2d 321 (D.C.Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978) (conspiracy described in affidavit incorporated into the warrant).

 The government argues, however, that the requisite specificity is supplied by the affidavit. "The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it . . . Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched." *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976). Under some circumstances, however, an affidavit may cure deficiencies which would exist were the warrant to stand alone. In *United States v. Klein*, 565 F.2d 183 (1st Cir. 1977), this court stated,

> "An affidavit may be referred to for purposes of providing particularity if the af-

fidavit accompanies the warrant, *and* the warrant uses suitable words of reference which incorporate the affidavit." (Emphasis in original.)

*Id.* at 186 n.3. *See also United States v. Johnson*, 541 F.2d at 1315; *United States v. Womack*, 166 U.S.App.D.C. 35, 49, 509 F.2d 368, 382 (D.C.Cir. 1974), *cert. denied*, 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975); *Huffman v. United States*, 152 U.S. App.D.C. 238, 245 n.7, 470 F.2d 386, 393 n.7 (D.C.Cir. 1971), *reversed on rehearing on another ground*, 502 F.2d 419 (1974); *Moore v. United States*, 149 U.S.App.D.C. 150, 152, 461 F.2d 1236, 1238 (D.C.Cir. 1972). Here the district court found and the government has not disputed that the affidavit was not served with the warrant. Nor does the warrant language incorporate the affidavit. Hence, the above standard was not satisfied.

 The government argues that where, as here, the executing officers have proceeded as if the inadvertently broad

---

**4.** This is not to suggest that a description of those documents which are to be seized from among a large number solely in terms of their relevancy to a particular fraud or other crime— *i. e.*, "all documents evidencing fraud in connection with FISLP"—would necessarily suffice. In many instances of warrants authorizing the seizure of documents from a general file efforts may also be required to narrow the documents by category, time periods, and the like.

It is interesting (although of no help to the government in view of the failure to incorporate—see discussion *infra*) that the listing of documents in the affidavit reflects an attempt at narrowing along the foregoing lines. Unlike the warrant description, the listing in the affidavit did not commence with the all-inclusive words "books, papers." Rather, more prudently, it listed the following subcategories of records:

> "1. Records of student financial accounts
> 2. Student applications
> 3. Student account cards
> 4. Student grade cards
> 5. Student correspondence files
> 6. General student files
> 7. Correspondence files to OE and HEW; to FISL lender banks; to NHSC
> 8. Student roster 1969 to present
> 9. Financial statements of Lafayette
> 10. General books of account, including cash receipts, disbursements, general journals, corporate ledgers

> 11. Notes receivable and notes payable
> 12. Instructors' grade books
> 13. Savings accounts of Lafayette
> 14. Printouts on FISL transactions
> 15. List of refunds to students
> 16. FISL student financial cards
> 17. Contracts with FISL lender banks
> 18. Copies of reports to OE and HEW
> 19. FISL student extension of graduation date forms, 1970 to present
> 20. FISL loans paid off by Lafayette
> 21. Student complaint memos
> 22. Computer tapes and microfilms
> 23. Computer tape layouts and computer tape printouts
> 24. Cancellation reports and directives
> 25. Refund ledgers"

and then concluded with the tailored catchall

> "26. Books, papers, memoranda, which may relate to the above requested documents."

While we need not now determine whether this more particularized approach, had it been followed in the warrant listing, was either essential or, by itself, would have saved the day, we do say without hesitation that it is better practice, and sometimes may be absolutely essential, for prosecutors whenever possible to frame documentary descriptions in particularized terms. Compare the warrant listing in *Andresen v. Maryland*, 427 U.S. 463, 480–81, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

warrant language were limited by the affidavit, the omission of the formal requisites—words of incorporation and stapling the affidavit to the warrant—should not invalidate the search and seizure.[5] The government points out that the affiant, who was knowledgeable in the FISLP and its operation, directed and supervised the search and seizure and took steps to insure that only FISLP-related records were seized. Furthermore, HEW Office of Education program compliance officers and auditors, specialists in FISLP, assisted during the search to identify FISLP records. Thus, the executing officers never had any doubt that only FISLP-related records, not records of other types of fraud or conspiracy, were to be searched and seized and consequently there was no danger of the officers exceeding the scope of their authority as contemplated by the affidavit, the government maintains.

Even if the government were to prove that the executing officers all understood only FISLP-related documents were the subject of the search and seizure, and that they acted as if the warrant had explicitly so stated, we would be compelled to reject the government's attempt to cure the overbreadth of the warrant language by the specificity of the affidavit. This is because the requirement that the warrant itself particularly describe the material to be seized is not only to circumscribe the discretion of the executing officers but also to inform the person subject to the search and seizure what the officers are entitled to take. *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970), *cert. denied*, 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971). Even assuming the government is able to prove the first purpose was otherwise served, the second was not. Moreover, self-restraint on the part of the instant executing officers does not erase the fact that under the broadly worded warrant appellees were subject to a greater exercise of power than that which may have actually transpired and for which probable cause had been established.[6] *Id.* at 1269. The particularity requirement is a check to just this sort of risk.

█ We have said that a principle deficiency here is the lack of particularity in the phrase which purports to qualify and delineate the generic categories of items: the description "books, papers . . . letters, correspondence, documents, . . which are and constitute evidence of the commission of violations of the [federal conspiracy and fraud statutes]" provides insufficient guidance to the executing officer as to what items from among many he should seize. The qualifying phrase in effect does nothing to limit the broad warrant description. If, of course, the generic descriptions were sufficiently specific and particular standing alone, the defect in the qualifying phrase would be of no effect. For the most part, though, the categories listed here are too broad. Certainly the description "books, papers . . . letters, correspondence, documents, memoranda, contracts, agreements, ledgers, worksheets, books of account, . . . computer tape/discs, . . . computer tape logs, computer tape layouts, computer tape printouts, . . reports and notes, administrative reports, financial data cards . . . financial documents (corporations), journals of accounts" does not, standing alone in the circumstances of this case, satisfy the fourth amendment. True, it could be argued that as the above description authorizes in effect the search and seizure of *all* books, papers, etc., the warrant does not suffer from a lack of particularity. The directions to the executing officer are straightforward—he is to cart away all documents. But while, so interpreted, the de-

---

5. A similar argument was rejected in *United States v. Marti*, 421 F.2d 1263, 1268–69 (2d Cir. 1970), *cert. denied*, 404 U.S. 947, 92 S.Ct. 287, 30 L.Ed.2d 264 (1971).

6. We may assume without so deciding that the affidavit established probable cause for the search and seizure of all FISLP-related documents evidencing fraud in connection with Lafayette's participation in the program; the warrant, however, did not limit the items to be seized to those connected with FISLP.

scription would be particular enough, it would also be too broad to satisfy the probable cause requirements of the fourth amendment. The affidavit does not establish probable cause to search and seize all of those items.[7]

In contrast to the broad categories of items set forth above, certain of the warrant items may be sufficiently particularized standing alone, for example, "rosters of students," "student files, file jackets and contents," "lesson and grading cards and registers," "student collection reports," and "student survey data." However, while these documentary descriptions may be sufficiently specific, they cover documents antedating Lafayette Academy's participation in FISLP. According to the affidavit in support of the warrant, Lafayette Academy was organized as a correspondence school in 1969 but did not participate in FISLP until 1972. While the affidavit establishes the relevance of post-1972 student documents,[8] it does not indicate any nexus between the earlier student documents and alleged criminal behavior. The warrant thus improperly authorizes the seizure of documents that are apparently irrelevant to the fraud.[9]

Two categories remain: "computer operation manuals" and "Office of Education (HEW) documents and forms." The relevance of the first is not apparent from the affidavit. Perhaps the manuals were to assist the agents in procuring and interpreting computer tape printouts, but as the printouts must now be returned, the manuals no longer appear to serve any purpose. The second is too general. The Office of Education operates many programs in addition to FISLP. *See* 45 C.F.R. part 101 *et seq.* It is quite conceivable that Lafayette participated in other OE programs and filled out documents and forms in conjunction therewith. The affidavit does not establish probable cause for the seizure of non-FISLP documents and forms, and therefore the description is insufficient.

Since we determine that the description of no item is free from fourth amendment difficulties, we do not reach the issue of severability. Because the warrant does not satisfy fourth amendment requirements we affirm the judgment of the district court granting appellees' Rule 41(e) motions. We express no opinion whether the government may reobtain part or all of the seized material by subpoena, properly limited warrant, or other means. *Compare Lord v. Kelley*, 223 F.Supp. 684, 691 (D.Mass.1963), *appeal dismissed*, 334 F.2d 742 (1st Cir. 1964), *cert. denied*, 379 U.S. 961, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

*Affirmed.*

KUNZIG, Judge (concurring).

I am forced to concur with Judge Campbell's able decision in this case, but only because of the excessively broad and generalized wording of the warrant as drawn.

---

7. A second group of items, in which we include "cancellation reports and directives," "reinstatement reports or forms," "Government loan registers," "refund ledgers," "registration (corporation) documents," may be slightly more specific but still too amorphous in the context of this warrant and affidavit. We admit of the possibility that "reinstatement report," for example, may have a definite meaning to participants in and those familiar with FISLP. If that were so, knowledgeable executing officers as well as the subjects of the search and seizure would be informed of the item authorized to be seized. But the warrant does not read "FISLP reinstatement reports" or otherwise indicate that such is a FISLP document, if indeed it is.

8. As explained in the affidavit, the above categories of student documents would enable HEW to determine the dates of actual student enrollment. From the enrollment dates, HEW could then determine, among other things, whether Lafayette had collected excessive interest payments. If a student who has actually dropped out (which may be evidenced by his grade card, for example) is represented to HEW as being enrolled, HEW continues to pay interest presumably due Lafayette on the student's loan.

9. The government's brief states that in order for HEW to review Lafayette's eligibility for FISLP as well as to "make other evaluation," pre-1972 records are essential. While this may be true, it is not supported by anything said in the affidavit.

I would want to caution attorneys and prospective litigants that technical errors will not necessarily always prove the "easy out" that this decision seemingly portends. In this era of expending white collar fraud, it may be that future court decisions will tend toward narrower interpretations of Fourth Amendment protections in this type of situation. I would hope so.

In the case at bar, however, too many errors (such as failure to incorporate the affidavit in the warrant) make such a decision impossible.

Therefore, with great reluctance, given the factual situation in this close and difficult case, I feel compelled to concur.