UNITED STATES of America, Appellee,

v.

Samuel A. BITHONEY, Defendant,
Appellant.

No. 79–1362.

United States Court of Appeals,
First Circuit.

Argued June 2, 1980.

Decided Sept. 24, 1980.

John P. White, Jr., Boston, Mass., with
whom Michael H. Riley and White, Inker,
Aronson, Connelly & Norton, P. C., Boston,
Mass., were on brief, for defendant, appellant.

Amos Hugh Scott, Asst. U.S. Atty. Boston, Mass., with whom Edward F. Harrington, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, and CAFFREY,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Samuel Bithoney, a Boston attorney, appeals his conviction on two counts of conspiracy under 18 U.S.C. § 371. The first count, premised on Bithoney's alleged involvement in a sham marriage scheme and subsequent cover–up attempt, charged Bithoney and co–defendant Lee Christo with conspiring to defraud the Immigration and Naturalization Service and with conspiring to influence a prospective grand jury witness. The Count II conspiracy centered around Bithoney's alleged participation, with four others, in a scheme to obtain Social Security cards fraudulently for illegal aliens. Upon Bithoney's motion, separate trials were held on each of the conspiracy counts, with Count II being tried first. Bithoney was found guilty on both counts, receiving a sentence of one year and one day on the first count and a concurrent sentence of two years on Count II.

## I.

■ We address Bithoney's varied contentions in the context of each separate count of the indictment, turning first to those raised under the earlier tried second count. Bithoney challenges as error the district court's denial of his motion to suppress various documents seized, pursuant to a warrant, during a search of his Boston law office. Bithoney contends the warrant was defective. It provided for the seizure of the following items from his office:

"[A]ll notes, memoranda, correspondence, passports, documents, copies and originals of Social Security Administration Forms SS–5, records of payments received, bills or invoices, and other papers, relating to the following individuals: 1. Joseph John Comperchio, 2. Antonio Leone, 3. Luis

Alberto Mardones, 4. Takis Angelos Koutsouris, 5. Yolanda Maria Nevarez, 6. Thomas Savvas, 7. Joseph Gebrael, 8. Juana Celida Batista, 9. Geronimo H. Buonocore, 10. Cesar A. Cerrudo, 11. Nicola Elia, 12. Norma Elia, 13. Angeliki Sipsa, 14. Nidia Gatica a/k/a Nidia Elena Palma, 15. Mr. Gatica, 16. Victor Antonio Brites, 17. Algonsina Romano Cocciolo Brites, all of which said documents constitute evidence, fruits and instrumentalities of the crime of conspiracy to defraud the United States Social Security Administration, in violation of 18 U.S.C. § 371."

We think the warrant was adequate, comporting with standards discussed in recent opinions of this circuit. *See United States v. Brien,* 617 F.2d 299 (1st Cir. 1980); *United States v. Roche,* 614 F.2d 6 (1st Cir. 1980); *United States v. Abrams,* 615 F.2d 541 (1st Cir. 1980); *In re Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir. 1980). It undertook to narrow and identify the documents subject to seizure, breaking them down into specific categories.[1] This practice minimized the likelihood of random excursions by the executing officers. *Compare Lafayette Academy, supra,* 610 F.2d at 4 n.4. The warrant also restricted seizable materials to documents relating to 17 named individuals–a further significant limitation on its scope, which reduced the likelihood of a general rummaging expedition. *Compare United States v. Abrams, supra,* 615 F.2d at 550 (Campbell, J., concurring). And finally, the warrant identified with some particularity the object of the conspiracy under investigation. *Compare Lafayette Academy, supra,* 610 F.2d 1; *United States v. Roche, supra,* 614 F.2d 6.

Bithoney, indeed, makes no allegation that the warrant is not sufficiently particular in its descriptive language. Rather, he urges only that the warrant's final qualifying phrase–"all of which said documents

---

* Of the District of Massachusetts, sitting by designation.

1. The "other papers" language qualifying the earlier described, seizable documents gives us little pause, as "the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." *United States v. Abrams,* 615 F.2d 541, 547 (1st Cir. 1980). *See also* the warrant in issue in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

constitute evidence, fruits and instrumentalities of the crime of conspiracy to defraud the United States Social Security Administration . . . ."–is fatally defective. Basically, Bithoney's argument is that the warrant does not simply authorize the seizure of documentary evidence of the specified crime, but rather goes much further by indicating that all documents relating to the named individuals are, in fact, evidence of the conspiracy alleged, and hence subject to seizure. Viewed in this light, the warrant, Bithoney argues, exceeds the scope of the underlying probable cause, as not all documents located in his law office relating to the named individuals could reasonably be assumed to be connected with the conspiracy charged. *See United States v. Abrams, supra,* 615 F.2d at 548–49 (Campbell, J., concurring).

Bithoney's proposed reading of the challenged warrant language is "hypertechnical." *Cf. United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). The phrase beginning "all of which said documents," though perhaps not drafted "with the niceties required in fields like conveyancing and estate planning," *id.* at 550, is most reasonably read as directing the officers to seize only those specified documents relating to the named individuals which are evidence of the described conspiracy. If the warrant was meant, as Bithoney urges, simply to direct the officers to seize any and all items relating to the 17 named individuals, it would have been unnecessary to restrict the scope of the search by specifying, as the warrant actually did, the various categories of seizable documents and the nature of the conspiracy involved. We think the warrant adequately focused the search and seizure upon just those documents likely to evidence the described conspiracy. The warrant adequately "circumscrib[ed] the discretion of the executing officers" and "inform[ed] the person subject to the search and seizure what the officers [were] entitled to take." *Lafayette Academy, supra,*

610 F.2d at 5. There was no fourth amendment violation.

■ Bithoney contends that under the standards announced by this court in *United States v. Petrozziello,* 548 F.2d 20 (1st Cir. 1977), there was insufficient evidence of his participation in the alleged conspiracy to support the admission of various coconspirator statements against him. The district court, on the sixth day of the 14 day trial of the second count, granted the government's request for admission, determining that both the existence of the conspiracy and Bithoney's participation therein had been shown, as required by *Petrozziello,* by a preponderance of the evidence. The court, in support of its ruling noted: Bithoney's participation in a December 4, 1979 meeting with his son Albert and a government informant at which time Albert passed to the informant social security applications for fraudulent processing as well as cash payments as remuneration for such processing; a November 16, 1979 telephone conversation between Bithoney and the informant in which Bithoney, though ultimately referring the caller to his son, indicated his familiarity with the caller and the scheme, and in no way disassociated himself with the scheme; the fact that nearly all the key events and transactions relating to the scheme took place in Bithoney's law office, where Bithoney, the sole attorney, worked with his two sons; the fact of the family relationship existing between Bithoney and his son Albert, the latter being, in the court's words, "the banker" for the scheme.

We have reviewed the relevant portions of the record and conclude that the district court's finding, by a preponderance, of the existence of a conspiracy and Bithoney's participation therein, are amply supported. Evidence introduced subsequent to the court's *Petrozziello* ruling only further indicates that the threshold standard of admissibility prescribed by that case was met here.[2]

---

**2.** In *United States v. Ciampaglia,* 628 F.2d 632 (1st Cir. 1980), decided after Bithoney's trial

and after oral argument before this court, we amplified our *Petrozziello* decision and held

**4**

## II.

Bithoney was charged and convicted under Count I in part for his role in a scheme whereby sham marriages with United States citizens were arranged for two aliens in order that they might defeat the immigration laws and fraudulently obtain permanent resident status. The marriages were performed in New Hampshire by a justice of the peace, following the obtaining of a waiver of the usual five day notice and waiting requirement. Bithoney made many of the necessary arrangements for the ceremonies and paid various fees and the like. Bithoney challenges both the district court's admission of evidence and the sufficiency of the evidence bearing on his knowledge of the fraudulent nature of the overall plan.

The government introduced, over objection, evidence of Bithoney's role in six prior notice–waived New Hampshire marriages, all involving aliens and all but one performed by the same justice of the peace who presided at the present ceremonies. The district court at first allowed this evidence to be developed solely to show Bithoney's knowledge of the mechanics of obtaining marriages in New Hampshire. Later, however, following the introduction of evidence of the details of the various previous marriages, the court instructed the jury that it could consider the prior marriages as bearing on Bithoney's state of mind, that is, "whether he participated in the [present ceremonies] with some knowledge of what this was all about, that it was not an accident." Bithoney argues, however, that as the prior marriages were not proven to be fraudulent, that is, arranged *solely* for immigration purposes, the evidence of his participation therein was basically irrelevant and the injection of those prior events into the present controversy erroneous.

We think it unlikely the court exceeded its discretion in admitting this evidence. *See United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1944); 10 Moore's Federal Practice § 404.2[2] at IV–114. Given such suspicious facts as Bithoney's role in arranging the various ceremonies, his personal attendance at the marriages, the regular use of the same New Hampshire justice of the peace, and the relatively large number of marriages, we think a jury was entitled to consider these events, along with the other evidence, in passing on Bithoney's knowledge. *See generally*, II Wigmore § 302 (Chadbourn Revision); McCormick on Evidence § 190 (2d ed.). We need not, however, linger over the question whether the proffered evidence was properly admitted. Even were we to assume that error was committed, the error was harmless. *See United States v. Bosch*, 584 F.2d 1113, 1117 (1st Cir. 1978). Bithoney introduced considerable evidence designed to show that the earlier marriages were not arranged solely for immigration purposes; the jury was fully capable of recognizing that these earlier events, by themselves, were of limited probative value. Moreover, the district court, in its final instructions, narrowly limited the use of this evidence.[3] And most importantly, there was strong and persuasive other evidence to establish Bithoney's knowledge of the fraudulent nature of the marriage scheme. We entirely reject Bithoney's claim of an insufficiency of evidence to prove his knowing participation in the sham marriage conspiracy. The evidence against Bithoney included not only the extremely unusual and suspicious circumstances surrounding the marriage ceremonies and Bithoney's assistance in arranging those ceremonies (including paying various fees), but as well some highly damning

that trial courts should "delay *Petrozziello* rulings until the conclusion of all the evidence. . . ." At 638. Failure to do so, however, is not plain error where, as here, no objection on this ground was rendered and the whole record supports the ruling. *Id.*

**3.** The district court, perhaps overcautiously, instructed, for example, that evidence of the prior New Hampshire marriages "may not be considered . . . in determining whether [Bithoney] did what the indictment charges. In fact, it may not be considered at all unless you [the jury] first find that he did, in fact, participate in the conspiracy with which he is charged here and that he did, in fact, in some way participate in a conspiracy on arranging false marriages in New Hampshire."

correspondence sent to Bithoney by his co–defendant Lee Christo. Additionally, there was evidence of incriminating behavior and comments by Bithoney made after it became apparent to him that the authorities were likely aware of his involvement in the scheme.

Similarly, Bithoney's contention that there was insufficient evidence to demonstrate his involvement in a conspiracy, also charged in Count I, to influence a prospective grand jury witness who was to testify concerning the marriage scheme is not borne out by the record. While it may be that the evidence of the actual attempt at obstruction by Bithoney and co–defendant Christo was stronger than the evidence of their conspiracy to do so, the evidence of the latter was sufficient. This included the facts of Bithoney's prior involvement with Christo in the marriage scheme itself, his five to ten minute meeting with Christo immediately prior to the obstruction attempt, and the joint comments by Bithoney and Christo urging the prospective witness to fail to testify forthrightly. That the proof of conspiracy was largely circumstantial is immaterial. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Dirring v. United States*, 328 F.2d 512, 515 (1st Cir.), *cert. denied*, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964); *United States v. Zozlio*, 617 F.2d 314, 316 (1st Cir. 1980).

*Affirmed.*