**BLACKIE'S HOUSE OF BEEF, INC., Plaintiff,**

v.

**Leonel J. CASTILLO et al., Defendants.**

**Civ. A. No. 78–787.**

United States District Court, District of Columbia, Civil Division.

Oct. 5, 1978.

Jack Wasserman, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Dennis A. Dutterer, Asst. U. S. Attys., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff is a corporation which operates restaurants in the District of Columbia. Defendants are the Commissioner of Immigration and Naturalization Service (the Service), the District Director of the Washington office of the Service, and one of the Washington agents.

Plaintiff claims that an entry and search of its restaurant and the arrest there of 15 aliens during the supper hour on March 30, 1978, violated rights guaranteed by the Fourth Amendment and was an actionable trespass. Plaintiff seeks a declaratory judgment, damages, and injunctive relief. Contending that there is no genuine issue of material facts, plaintiff moved for summary judgment.

For reasons more fully stated in the findings and conclusions which follow, the Court will grant plaintiff's motion and schedule hearings on relief at the early convenience of the parties and the Court.

### Findings of Fact

The undisputed facts and supporting documents show that:

1. Defendants,[1] on March 30, 1978, entered one of plaintiff's restaurants during the supper hour and arrested there 15 aliens employees. Some of the arrested aliens had entered the United States legally; some had entered illegally.

2. Prior to their search of the restaurant defendants obtained a search warrant from a United States Magistrate in Washington, D.C. The search warrant (Form A.O. 93 (Rev. Apr. 1973)) was in part printed, and in part typed. A copy is attached as Appendix A.

3. The search warrant recited that defendant Foster had made an affidavit before the Magistrate with respect to the premises known as Blackie's House of Beef Restaurant, 22d & M Streets, N.W., Washington, D.C.

4. The printed portion of the warrant made provision for the Magistrate to record that the affiant:

has reason to believe that

[on the person of          ]

[on the premises known as]

there is now being concealed certain property.

There followed a blank in which was printed very minutely the words: "here describe property."

5. On the search warrant issued in this case the printed words "on the person of" and the printed word "property" were marked over by several typewritten letters "x." Above the stricken word "property," was typed the word "persons," so that this portion of the warrant read that defendant Foster "has reason to believe that on the premises known as [Blackie's Restaurant] there is now being concealed certain persons namely."

6. In the blank space provided for the Magistrate to "describe property," there was written:

Aliens who are believed to be in the United States in violation of United States Code, Title 8, Section 1325 and Section 241(a)(2) of the Immigration and Naturalization [Nationality] Act in that said aliens entered the United States without inspection.

---

1. Defendant Foster made the challenged entry. He was the authorized agent of Defendants Castillo and Mongiello.

7. The printed form further recited that the Magistrate was:

satisfied that there is probable cause to believe that the *property so described* is being concealed on the *person* or *premises* so described . . .. [Emphasis added.]

8. There followed the Magistrate's printed "command" that the defendants search:

the person or place named for the *property* specified . . . and if the *property* be found there to seize *it*, leaving a copy of this warrant and receipt for the *property* taken, and prepare a written *inventory of the property* and promptly return this warrant and bring the *property* [before the Magistrate] as required by law. [Emphasis added.]

9. Defendant Foster's affidavit, upon which the Magistrate relied, stated on information and belief that a number of aliens not lawfully entitled to reside in the United States employed at plaintiff's restaurant were subject to interrogation and arrest under §§ 1357(a)(1) and (a)(4) of the United States Code, Title 8. The affidavit identified as the sources of this information and belief affidavits by other aliens who had worked at the restaurant, reports by anonymous informers, documentary evidence, as well as defendant Foster's personal observation of "seven illegal aliens employed there who were subsequently deported from the United States."

10. The affidavit further related unsuccessful efforts to obtain plaintiff's permission to enter and interview employees and the plaintiff's refusal to permit entry without a search warrant.

11. Finally the Foster affidavit requested "a search warrant . . . authorizing him and others to enter [the restaurant] and there to search for and arrest the individuals subject to arrest pursuant to . . Section 1357."

12. This affidavit was attached to another Foster affidavit for search warrant on Form A.O. H–6 (Rev. Apr. 1973) which Foster signed as "Criminal Investigator."

13. On March 31, 1978, defendant Foster executed the return called for by the search warrant. (A copy is attached as Appendix B.) The return disclosed that he had executed the warrant by personal service on a secretary at the restaurant and that:

On March 30, 1978 at 6 o'clock p. m. [he] searched the person or premises described in the warrant and . . . left a copy of the warrant with [the secretary] together with a *receipt* for the *items* seized. (mailed on 3–31–78.)

The following is an *inventory of property* taken pursuant to the warrant: see attachment: [Emphasis added.]

14. In the return defendant Foster further represented that:

This *inventory* is made in the presence of [an Assistant Director of the Service] and

. . . that this Inventory [sic] is a true and detailed account of all the persons taken by me on the warrant. [Emphasis added.]

15. Attached to the return was a document prepared in tabular form and signed and dated by Foster. The attachment listed fifteen of what appear to be names of persons with identifying numbers, dates, country of origin, and other identifying data. There followed a recitation that:

The above aliens were *apprehended* at Blackie's House of Beef, 22nd and M Sts., N.W., Washington, D.C. as a result of an area control operation based upon federal warrant # 78–0269 M Cr, dated 3–27–78 at Washington, D.C. [Emphasis added.]

16. The return did not refer to any property seized pursuant to the warrant.

17. No arrest warrant is in the record here.

18. Before the Service enters any premises to arrest aliens, its standard operating procedure is to attempt to:

secure voluntary permission to enter . . and only after such permission is denied, does the . . . Service consider securing a search warrant.

[I]f such permission is denied [in the future by plaintiff] and if the . . .

Service believes it is appropriate, it may secure a warrant to enter the premises of plaintiff. Defendants' Statement of Genuine Issues, ¶¶ 4 and 5.

### Conclusions of Law

■ 1. A search warrant should be strictly construed. *See Keiningham v. U. S.*, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

2. The search warrant issued in this case authorized only a search for "property." The plain terms of the warrant did not authorize the Service to enter and search plaintiff's restaurant to find and arrest aliens employed there.

■ 3. Federal Rules of Criminal Procedure 41 does not enlarge the search warrant here or validate the entry and search made pursuant to it. That rule applies exclusively to searches for "property." Subparagraph (h) of Rule 41 defines the term "property . . . to include documents, books, papers and other tangible objects." It may be, as the government argues, that the fact that certain aliens were in the restaurant (or anywhere else in the United States) was evidence that the aliens were guilty of illegal entry. But it does not follow that the aliens in the restaurant are "tangible objects" and proper subjects of a search and seizure on a warrant issued pursuant to Rule 41. The government contention that the aliens in the restaurant were such "tangible objects" clashes with a fundamental written into our Constitution in the 1860's: no human being in the United States may be dealt with as property by government officials, or by any one else.

■ 4. Neither the Fourth Amendment nor any statute permits government officials to use a warrant commanding a search for property as authority to enter a privately owned restaurant in Washington, D.C. in search of illegal aliens believed to be working there.

The Fourth Amendment authorizes issuance of warrants upon probable cause, "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Here, however, the warrant did not authorize any search for persons, much less particularly describe them. It authorized only the search for and seizure of property.

5. The government's heavy reliance on the Supreme Court's decision in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) is seriously misplaced. In that case Service agents found and seized marijuana in an automobile owned and being operated by a Mexican citizen on a U. S. highway 25 air miles north of the Mexican border. The Mexican was in the United States lawfully and the agents had no cause to search that particular automobile. It was stopped at random as part of a surveillance by a roving patrol. The government claimed that the constitutional reasonableness of that search was established by court decisions dealing with administrative inspections and by § 1357(a)(3) of the Immigration and Nationality Act, which provides for warrantless searches of automobiles and other conveyances "within a reasonable distance from any external boundary of the United States." The Court disagreed. With respect to administrative inspection claims, the majority emphasized the "central difference [between the search of] businessmen engaged in . . . federally licensed and regulated businesses [who] accept the burdens and benefits of their trade, [and a person] not engaged in any regulated or licensed business." *Id.* at 271, 93 S.Ct. at 2538.[2] The *Almeida* search was not a valid administrative inspection.

Turning to the government claim that the search was made reasonable by Congress' exercise of its power to exclude aliens from the country, the Court recognized the

---

**2.** Citing *Camara v. Municipal Court of the City & County San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

reasonableness of a warrantless search "at the border itself, [or] at its functional equivalents" such as an international air terminal in St. Louis. But the random search 25 miles from the border was stricken as not contemplated by the statute and, therefore, unreasonable.[3]

■■ Obviously, the opinion relied on by the government does not even purport to justify a government search of a Washington, D.C. restaurant for the purpose of finding and seizing alien individuals on the authority of a warrant to search for, seize, and return "property." The plaintiff here had not impliedly consented to the search by entering a regulated business. And whatever may be the authority of the Service to enter and search certain public restaurants in border towns or port cities which cater to aliens, Washington, D.C. is more than 100 miles from the nearest international border, and there is no allegation that this restaurant specially invited identifiable aliens, much less illegal ones, as patrons.

■ 6. The Act does not authorize the search conducted here in the absence of a valid warrant. Section 1357, invoked in *Almeida*, specifically authorized searches of automobiles without warrants only "within a reasonable distance from [the border]." There is no word in § 1357 which gives the Service any special access to a privately owned unregulated business establishment operating far from the border. Subsection (1) authorizes the Service to interrogate any alien or suspected alien. But it does not give the Service access to the premises of others for the purpose of interrogating any alien there. Subsection (2) authorizes warrantless arrest of an alien observed entering the United States illegally or an alien already here illegally who might escape before a warrant could be obtained. Subsection (4) authorizes warrantless arrest of an alien suspected of felonious violation of the immigration laws, but again only if there is a likelihood of escape before an arrest warrant can be obtained. These subsections make no special provision for search for these aliens or entry of private places to make an arrest. Subsection (3) does provide for searches by the Service. But that provision is carefully circumscribed. The sense of the words limits its special dispensations to "a reasonable distance from any external boundary." This power is further limited to the search of vehicles—vessels, railroad cars, aircraft, and other conveyances. The only "access" afforded to immobile private property is limited to "private lands, but not dwellings" located within a distance of 25 miles from the border. Thus, the relevant immigration statute does not sustain the search here without a valid warrant.

Accordingly, an Order will accompany this Memorandum entering a declaratory judgment that the defendants' entry and search of plaintiff's restaurant was unreasonable and unlawful. A hearing on relief will be scheduled for a convenient early date. At that hearing the parties should address and, if indicated, adduce documentary evidence, affidavits, and other testimony with respect to:

1. The amount of damages, if any, to which plaintiff may be entitled. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

2. Conduct by plaintiff, if any, which may bar equitable relief.

Appendix to follow.

---

**3.** Dissenters thought Congress had contemplated the search. *Almeida-Sanchez v. United States, id.* 413 U.S. at 292–98, 93 S.Ct. at 2549–2552.

# APPENDIX A

Form A O 93 (Rev. Apr. 1973)                                          Search Warrant

# United States District Court
### FOR THE
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

                                          $78 - 0269 m er$
                                          Docket No.

VS.

                                          Case No.

Entire Premises Known as
Blackie's House of Beef          **SEARCH WARRANT**
Restaurant, 22nd & M Streets,
N.W., Washington, D. C.

To

Affidavit(s) having been made before me by   Special Agent David C. Foster

that he has reason to believe that { ~~on the person of~~   } 
                                    { on the premises known as }   Entire premises of
                                    Blackie's House of Beef Restaurant, 22nd &
                                    M Streets, N. W., Washington, D. C.

                Washington      in the            District of   Columbia
                                persons
there is now being concealed certain ~~property~~ namely Aliens who are believed to be in
    the United States in violation of United States Code, Title 8,
    Section 1325 and Section 241(a)(2) of the Immigration and Naturaliza-
    tion Act in that, said Aliens entered the United States without in-
    spection.

                                                    persons          are
and as I am satisfied that there is probable cause to believe that the ~~property~~ so described ~~is~~ being
concealed on the person or premises above described and that grounds for application for issuance of the
search warrant exist as stated in the supporting affidavit(s).

    *You are hereby commanded* to search within a period of _____ *5 days* _____
(not to exceed 10 days) the person or place named for the property specified, serving this warrant
and making the search { ~~in the daytime ( 6:00 am to 10:00 pm )~~ }
                       { at any time in the day ~~or night~~ } and if the property be found
there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written
inventory of the property seized and promptly return this warrant and bring the property before
_____ as required by law.
        *Federal judge or magistrate*

    Dated this        day of                , 19
                                                    _____
                                                    *Judge (Federal or State Court of Record) or Federal Magistrate*
                                                         11:25

## APPENDIX B

### RETURN

I received the attached search warrant   March 27          , 19 78 , and have executed it as

follows: by personal service to "Miss Mary", Secretary for Mr. Auger at Blackie's House of Beef, 22nd and M St.s N.W. Washington, D.C.

On March 30,          , 19 78 at 6          o'clock  P   M, I searched the person or premises described in the warrant and

I left a copy of the warrant with "Miss Mary" secretary to owner, Mr. Auger_____
                                  <sub>name of person searched or owner or "at the place of search"</sub>

together with a receipt for the items seized. (mailed on 3-31-78).

The following is an inventory of property taken pursuant to the warrant: see attachment:

James F. Davey, Clerk

This inventory was made in the presence of  R.B. Albina, Assistant District Director, Investigations, Immigration & Naturalization Service, Wash. D.C.
                    and

I swear that this Inventory is a true and detailed account of all the ~~property~~ PERSONS taken by me on the warrant.

Subscribed and sworn to and returned before me this   3/st day of March, 1978.

_____,
                                          . Federal Magistrate

| ALEMAN-GARCIA, Jose Julian | A22 638 180 | 2/13/57 | El Sal | EWI | MCA | 12/5/77 | Inv PLC |
| RAMOS-FLORES, Jesus | A22 638 181 | 2/5/51 | El Sal | EWI | SYS | 7/15/77 | Inv DCF |
| HERNANDEZ-HERNANDEZ, Tibursio | A22 638 182 | 8/11/39 | El Sal | EWI | SYS | 11/15/77 | Inv FRA |
| HERNANDEZ-GUEVARRA, Francisco | A22 638 183 | 9/17/45 | El Sal | EWI | SYS | 3/8/78 | Inv ADP |
| CUPIDO-MORENO, David | A22 638 184 | 1/8/43 | El Sal | EWI | LAR | 3/6/78 | Inv JRO |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REYES-ALVAREZ, Rojelio | A22 638 185 | 9/16/56 | El Sal | FWI | LAR | 9/20/77 | Inv MDR |
| ANDRADES, Pablo | A22 638 186 | 6/19/36 | El Sal | EWI | DEB | 2/20/78 | Inv SZP |
| RAMOS-FLORES, Miguel Angel | A22 638 187 | 11/7/57 | El Sal | FWI | SYS | 9/?/77 | Inv JCH |
| DIAZ-CABRERA, Pedro | A22 638 188 | 9/17/56 | El Sal | EWI | SYS | 5/?/77 | Inv WNC |
| RASHID, Abdur | A22 638 189 | 12/12/50 | Bangladesh | A-3 | WAS | 9-3-75 | Inv TEF |
| ELIGWE, Valentine | A20 640 718 | 6/16/47 | Nigeria | G-4 | | | |
| AMAYA-Moreno, Wilfredo | A22 218 401 | 3/18/52 | El Salvador | EWI | | | |
| VATANAVALAR, Prasat | A20 627 633 | 3/16/49 | Thailand | EK F-1 | | | |
| SLAVOMIS, Mandic | | 6-28-45 | Yugoslavia | PRA | | | |
| PERNOT, Alcira | | 5-10-43 | Bolivia | B-2 | | | |

The above aliens were apprehended at Blackie's House of Beef, 22nd and M Sts. N.W. Washington, D.C. as a result of an area control operation based upon federal warrant #78-0269 M Cr, dated 3-27-78 at Washington, D.C.

*(signature)* 3/30/78