**BLACKIE'S HOUSE OF BEEF, INC., Plaintiff,**

v.

**Leonel J. CASTILLO et al., Defendants.**

**Civ. A. No. 78–2338.**

United States District Court, District of Columbia.

Oct. 3, 1979.

Jack Wasserman, Washington, D. C., for plaintiff.

Dennis A. Dutterer, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

### I. Facts

OBERDORFER, District Judge.

This is an action by Blackie's House of Beef, Inc., ("Blackie's") against officials of the Immigration and Naturalization Service ("INS") on account of INS' use, on November 17, 1978, of a magistrate's order or warrant to search Blackie's restaurant and cocktail lounge on 22nd and M Streets, N.W., in Washington, D.C., and to locate, question and remove from there fourteen

Blackie's employees, alleged to be deportable aliens. One month earlier, this Court had declared illegal another INS search for deportable aliens at Blackie's, because the warrant invoked by INS had authorized only the search for and seizure of property under Federal Criminal Rule 41. *Blackie's House of Beef, Inc. v. Castillo,* 467 F.Supp. 170 (D.D.C.1978). On two. other previous occasions, INS entered plaintiff's premises without any warrant and seized persons there for deportation. These four searches have resulted in the seizure and forcible removal from plaintiff's premises of 61 persons subsequently subjected to deportation proceedings.

While declaring the earlier search and warrant illegal, the Court concluded on October 13, 1978 that:

> There being no imminent threat of further action pursuant to similar warrants by defendants against plaintiffs . . .
> the Court determines that plaintiff's prayer for equitable relief is premature but viable.[1]

In apparent recognition of these conditions for denial of equitable relief and the narrow grounds for the declaration that the earlier warrant was defective, on November 15, 1978, INS filed *ex parte* an application for a court order in C.A. 78–787, authorizing another entry into plaintiff's 22nd and M Street restaurant for the stated "purpose of making such search as is necessary . . in order to locate aliens in the United States without legal authority and take such actions as authorized by the Immigration and Nationality Act."[2]

The November 15 application invoked the Court's general jurisdiction created by the Immigration and Nationality Act, made no reference to Federal Criminal Rule 41 and did not seek authority to search for tangible articles or evidence; it requested authority

---

1. Plaintiff abandoned its claim for damages allegedly caused by the earlier search and related activities.

2. The November 15 application was filed under the caption of No. 78 787 and referred to this Court as a related matter under Local Rule 3 7. Determining that the case was not related within the meaning of the Local Rule because that

case was terminated, and having concern about the need either to proceed *ex parte* with the pending application or impair the INS' ability to search by surprise, this Court returned the application to the Clerk for random reassignment. By this process it reached Judge Aubrey Robinson.

to search the restaurant for deportable aliens and asserted probable cause for a belief that a search would disclose their presence there. Treating the November 15 application as seeking a warrant, Judge Aubrey Robinson referred it to a U.S. Magistrate.

On November 16, 1978, the magistrate entered an "Order for Entry on Premises to Search for Aliens in the United States Without Legal Authority," a copy of which is attached hereto as Appendix A (and hereinafter referred to as a "warrant"). The warrant recited the filing of the application supported by two affidavits, and the magistrate's finding

> on the basis of the affidavits that there is probable cause to believe that there are persons who are aliens in the United States without legal authority and subject to expulsion proceedings . . . located on or within the premises described.

On the strength of the finding of probable cause and invoking the Supreme Court's decision in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) and sections 103(a), 279 and 287 of the Immigration and Nationality Act of 1952, 8 U.S.C. 1103(a), 1329, 1357, the magistrate's Order of November 16, 1978 authorized defendants:

> to enter the premises described during daylight hours and to make such search as is necessary . . . to locate aliens in the United States without legal authority . . . .

The supporting affidavits related the first names of six allegedly deportable Spanish-speaking aliens likely to be present at plaintiff's restaurant during the period in which INS requested the right to search. The affidavits variously reported that plaintiff employed 8, 11, 16, 19 and 30 deportable Spanish-speaking aliens "believed to be of Hispanic descent, some of whom were

dressed in a manner believed by the affiant to characterize such persons."

According to the affidavit, one group of 19

> had foreign personal characteristics and attire that are native to Hispanics from Central and South America, including dark complexion and hair, foreign-style haircuts and grooming, ill-fitted and inexpensive clothing and foreign-style, inexpensive shoes. They were heard to speak nothing but Spanish.[3]

The warrant itself, however, bore no names, first or otherwise, nor any other identifying description of any alien for whom the search was authorized. It gave the persons executing the warrant or those subject to it no direction as to whether the objects of the search of the restaurant were employees, patrons, or passers-by. The warrant did not state nor indicate the number of allegedly deportable aliens involved.[4]

The warrant limited the search to daylight hours, thereby excluding the evening, cocktail and dinner period. It made no reference, however, to the nature of plaintiff's business or the interests of employees and patrons who might be present in the restaurant innocently and legitimately at the time of a daylight search and any follow-up on it. There was no recital on the face of the warrant that the magistrate or anyone else had given any thought to or made any judgment about the interests of persons present at the time of the search who were not targets of it.

At 11:12 a.m., November 17, 1978, approximately ten INS officers executed the warrant. Six officers entered the premises at that time; four remained outside and did not enter until the search was nearly complete. In the ensuing 23 minutes the officers located, interrogated, detained, handcuffed and removed from the restaurant 14 allegedly deportable aliens.[5] All of the persons so questioned and detained were in the

---

3. Affidavit of Russell G. Parry, Jr., filed Nov. 15, 1978, at ¶ 4.

4. Of course, the plural reference was obviously to more than one.

5. Those removed were transported from outside the restaurant to an INS office where deportation proceedings were commenced. Two were also prosecuted for violation of the Immigration and Nationality Act.

kitchen and utility areas of the restaurant. After removing the 14 from the restaurant, the officers detained them for an additional ten minutes in an alley behind the restaurant while readying them for transportation to the local INS office.

In addition, the officers observed on the premises four other persons whom they believed might be deportable aliens. The officers questioned, and decided not to detain, two of the four. Two others so observed eluded questioning and detention.

The officers originally entering the restaurant observed ten patrons there, as well as other employees. The officers observed four other patrons enter the restaurant while the search was in progress. During the search one officer questioned, but did not detain, one person who appeared to be attempting to leave the public area of the restaurant. At about 11:45 a.m., the search and removal ended and the INS officers left the vicinity of plaintiff's restaurant with their subjects in custody.

Reporters and photographers were present at the time of the search; news stories and photographs were printed prominently in the local press on the day following the search.

As required by the warrant, on November 20, 1978, INS officers filed with the magistrate a "Return On Order Permitting Search of Premises" ("Return"). The return advised that the entry and search had been conducted on November 17; it recited the names and country of origin of fourteen aliens "in the United States without legal authority [who] were found in the premises."

## II. Summary

### A.

The complaint invokes this Court's jurisdiction under 28 U.S.C. § 1331 to attack the legality of the November 17, 1978, search. The controversy is now before this Court on defendants' renewed motion to dismiss [6] and on cross-motions for summary judgment, each supported by statements of material facts, a stipulation of facts and factu-

al admissions in the legal memoranda which have also been filed.

### B.

 The Court has concluded on the facts here that the search conducted by the INS violated the plaintiff's fourth amendment rights. The warrant failed to identify with sufficient particularity the allegedly deportable persons for whom the INS had authority to search, thereby authorizing an overbroad search of plaintiff's premises, and failed to reflect consideration by the magistrate of the effect of the search, interrogation and seizure upon the plaintiff's business and upon the convenience and safety of plaintiff's patrons and innocent employees. The deficiencies of the warrant could not be cured by the authority of the INS to arrest without a warrant, 8 U.S.C. § 1357(a), or by application of the "plain view" doctrine after the INS legitimately gained access to plaintiff's premises, since the defendant knew when it applied for the warrant that it intended to search for persons not identified in the warrant and seize all persons whom the defendant thought to be illegal aliens.

### C.

The claims for damages against the individual defendants can be resolved on their motions to dismiss. The Supreme Court pronouncements relied on here did not so "clearly establish" any duty with respect to the completeness and particularity of warrants that defendants' actions could fairly be attributable to malice or bad faith. By applying to this Court for an order they made a best effort to avoid actions inconsistent with this Court's earlier one. They applied for and relied in good faith on the magistrate's order or warrant authorizing the entry and search and on legal advice as to their statutory authority to act as they did once they gained entry. All of these considerations immunize the individual defendants from any damage claim by plaintiff here. *See Butz v. Economou*, 438 U.S.

---

6. Defendants' original motions to dismiss were denied on April 6, 1979.

478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Halperin v. Kissinger* (1979), 196 U.S.App. D.C. 285, 606 F.2d 1192.

### III. Discussion

#### A.

The plaintiff challenges at the threshold the jurisdiction of the magistrate to issue the warrant here. But the magistrate signed this warrant on reference from Judge Robinson. The jurisdiction of a District Judge to authorize an INS entry and search for deportable aliens is based on 8 U.S.C. § 1329. That section provides that:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions [of the Immigration and Nationality Act].

The District Court's authority to authorize such an entry and search is reinforced by the All Writs Statute, 28 U.S.C. § 1651, authorizing a District Court to issue any writ:

> necessary and appropriate in aid of [its jurisdiction] and agreeable to the usages and principles of law.

A Court's jurisdiction with respect to search orders sought by INS is confirmed by *Almeida-Sanchez v. United States,* 413 U.S. 266, 283–85, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (Powell, J., concurring).

In this case, instead of acting on the INS application personally, Judge Robinson referred it to a U.S. Magistrate. Our Local Rules contemplate issuance of search warrants by a magistrate. Rule 3–8(3), D.D. C.R. In this District, magistrates routinely issue most warrants. Judge Robinson's reference of this warrant to a magistrate was thoroughly appropriate (if not necessary) in aid of Judge Robinson's jurisdiction, as well as "agreeable to the usages and principles

of law," particularly the usages in this jurisdiction. 28 U.S.C. § 1651. In addition, 28 U.S.C. § 636(b) conferred upon Judge Robinson authority to "designate a magistrate to hear and determine any pretrial matter pending before the court" and to assign to a magistrate "such additional duties as are not inconsistent with the Constitution and the laws of the United States." When Judge Robinson exercised that authority by referring to a magistrate the INS application to search Blackie's, the Judge conferred upon the magistrate any jurisdiction he might otherwise lack for action on the INS application.

#### B.

On the merits, the heart of plaintiff's claim is a challenge to the warrant itself as authority for the search which transpired. The principles controlling the validity of the warrant at issue here have been clearly stated by the Supreme Court in a number of recent decisions. While none confronts this situation directly, taken together, the cases underscore the central role of the magistrate and the warrant procedure in safeguarding the fourth amendment rights such as are at issue here.

 The fourth amendment protects the interests of individuals in privacy and security by requiring that all searches be reasonable,[7] and, in the ordinary case, be performed pursuant to a properly issued warrant.[8] Mere reasonableness is no substitute for prior judicial approval of any search by a neutral and detached magistrate.[9] The requirement of a warrant reflects the "basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches

---

**7.** *See Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

**8.** *Arkansas v. Sanders,* ––– U.S. ––– , 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *United States v. Chadwick,* 433

U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**9.** *Arkansas v. Sanders, supra; United States v. United States District Court,* 407 U.S. 297, 317, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *Coolidge v. New Hampshire, supra,* 403 U.S. at 481, 91 S.Ct. 2022 (1971).

and levels of Government," *United States v. United States District Court, supra,* 407 U.S. at 317, 92 S.Ct. at 2137, and concern that the necessity for any intrusion be decided "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

■ In order to ensure that the warrant procedure is not an empty gesture, the Constitution requires that the magistrate determine in advance that the proposed search is reasonable [10] and that the warrant, by its terms, "particularly describ[es] the place to be searched, and the person or things to be seized." U.S.Const. amend. IV; *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Together, these restrictions guarantee that "searches deemed necessary [remain] as limited as possible," *Coolidge v. New Hampshire, supra,* 403 U.S. at 467, 91 S.Ct. at 2038; and that "nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see also Delaware v. Prouse, supra; Marshall v. Barlow's, Inc., supra; Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ Although the magistrate is not required to specify in a warrant "the precise manner in which [it is] to be executed," *Dalia v. United States,* 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), the Constitution imposes upon the magistrate a heavy burden of confining a proposed search within the bounds of reasonableness. As Justice Powell explained in his concurring opinion in *Zurcher v. Stanford Daily* :

> [T]he magistrate must judge the reasonableness of every warrant in light of the circumstances of the particular case, carefully considering the description of the evidence sought, the situation of the premises, and the position and interests of the owner or occupant. . . . If

the reasonableness and particularity requirements are thus applied, the dangers are likely to be minimal.

436 U.S. at 570, 98 S.Ct. at 1984. Only by zealously performing his function of conducting a "particularized inquiry" based on the circumstances of the search can the magistrate "perform the important function of preventing harassment by keeping that invasion to a minimum." *Michigan v. Tyler,* 436 U.S. 499, 507–08, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978).

■ As the Supreme Court has repeatedly made plain, the magistrate must do more than review passively requests for warrants. Rather, he is expected to employ the "ample tools at his disposal to confine warrants to search within reasonable limits." *Zurcher v. Stanford Daily,* 436 U.S. at 567, 98 S.Ct. at 1982; *see also Arkansas v. Sanders, supra; Michigan v. Tyler, supra,* 436 U.S. at 508, 98 S.Ct. 1942.

■ Moreover, the warrant must itself reflect the magistrate's exercise of discretion and control in order to "provide assurances from a neutral officer that the inspection is reasonable under the Constitution," and to "advise the [subject] of the scope and objects of the search, beyond which limits the [search] is not expected to proceed." *Marshall v. Barlow's, Inc.,* 436 U.S. at 323, 98 S.Ct. at 1826.

■ It is important to note that the protections of the fourth amendment are not confined to those suspected of criminal activity, but encompass any violation of a cognizable interest in security or privacy. *Zurcher v. Stanford Daily, supra; Camara v. Municipal Court, supra.* In rejecting the claim that *more* than probable cause and reasonableness were required for third-party searches, Justice White, writing for the majority in *Zurcher,* also rejected the contrary proposition that the fourth amendment was *less* protective of the interests of third-parties than of the actual targets of the investigation. *Zurcher v. Stanford Dai-*

**10.** *Arkansas v. Sanders, supra; Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

ly, *supra,* 436 U.S. at 555–56, 98 S.Ct. 1970; *see also id.* at 570 n. 2, 98 S.Ct. 1970 (Powell, J., concurring).

■ Thus, it is the magistrate's task to balance the intrusion on fourth amendment interests of the person searched against legitimate government interests, irrespective of whether the person is a target. *See Delaware v. Prouse, supra,* 99 S.Ct. at 1396. In striking this balance, the magistrate must consider a number of distinct, constitutionally protected interests of the person subject to a search, including: "the threat of disruption to the occupant . . . ." *Michigan v. Tyler, supra,* 436 U.S. at 507, 98 S.Ct. at 1949; his "position and interests," avoiding "harassment," *id.* at 507–08, 98 S.Ct. 1942, the "privacy and security of individuals," *Marshall v. Barlow's Inc., supra,* 436 U.S. at 312, 98 S.Ct. 1816; protection against "subjective intrusion—the generating of concern or even fright on the part of lawful travelers," *U. S. v. Martinez-Fuerte,* 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976); "physical and psychological intrusion" and "unsettling show of authority" and fright or even annoyance, *Delaware v. Prouse, supra,* 99 S.Ct. at 1398. "[T]he probable degree of interference with the rights of innocent persons," *Almeida-Sanchez v. United States, supra,* 413 U.S. at 284, 93 S.Ct. at 2545, is also an important fourth amendment concern.

### C.

The INS relies for authority for this most recent search of Blackie's entirely upon "specific evidence of an existing violation, *e. g.,* illegal aliens located in the building to be searched." Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, April 2, 1979, at 2. There is no

effort by the INS to invoke "broad administrative standards" as its authority. *Id.; see generally Marshall v. Barlow's, Inc., supra,* 436 U.S. at 313–14,[11] 98 S.Ct. 1816.

The INS proceeds on two theories: first, because there was probable cause to believe that deportable aliens were present at Blackie's, a search warrant to enter the premises was authorized. INS contends that having thus lawfully gained entry, it needed no further authority from the magistrate to pursue, hold, question and remove any person in Blackie's determined by the searching officers to be a deportable alien. According to INS, 8 U.S.C. § 1357(a) and the "plain view" doctrine [12] authorized the follow-up actions of its officers. Alternatively, INS claims that in the circumstances, the warrant itself authorized all of the actions taken by the officers inside Blackie's.

Both of these claims of authority miss the sense of plaintiff's protest. It is not limited to entry and search; nor does it contest the arrests *qua* arrests. INS created a commotion in Blackie's by entering with a squad-size force, interrogating suspects, seizing them, and removing them from a restaurant in which plaintiff and its employees were preparing to serve lunch to patrons. It is the combination of INS activities inside the restaurant and the consequent threat to the business conducted there for which plaintiff seeks the protection of the fourth amendment. This intrusion was not authorized by the plain language of the warrant. The warrant for a search could not lawfully be enlarged to justify the total intrusion either by the statute authorizing arrest without a warrant by INS officers or by the "plain view" doctrine as it has been authoritatively interpreted by the Supreme

---

**11.** Nor does the INS purport to rely upon the "border search" exception, *see generally United States v. Brignoni-Ponce, supra,* or the doctrine of "area searches," which was not authoritatively considered by the majority in *United States v. Almeida-Sanchez, supra,* 413 U.S. at 270 n.3, 93 S.Ct. 2535. The INS also does not contend that it had sufficient authority—either by warrant or statute—to make arrests prior to entering Blackie's, so that the initial intrusion

was legitimized by the doctrine of "hot pursuit," *see Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), or to execute an arrest warrant, *see Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970).

**12.** *See generally Coolidge v. New Hampshire, supra.*

Court. Even if the warrant were treated as anticipating some arrests, it is completely lacking in the specificity required by the Constitution.

The first INS claim based on the statute and the "plain view" doctrine has superficial appeal. Section 287(a), 8 U.S.C. § 1357(a), authorizes INS officers to interrogate without a warrant "any alien or any person believed to be an alien as to his right to be or to remain in the United States" and to

arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of . . . [laws regulating admission, exclusion or expulsion of aliens] and is likely to escape before a warrant can be obtained for his arrest . . . .

8 U.S.C. § 1357(a).

But there is a negative pregnant in the statute relied upon by the INS: in making arrests far from the border, if there is an opportunity to obtain an arrest warrant, the INS must do so. The terms of the statute demonstrate that Congress did not purport to sanction warrantless arrests on *any* occasion. Further, it is well established that the requirements to arrest and to search are not the same, and authority for one is neither a necessary nor a sufficient predicate for the other. *Carroll v. United States,* 267 U.S. 132, 155–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Consequently, the INS may not rely on its statutory authority to arrest aliens found in Blackie's to justify a potentially violent "roundup" of aliens discovered in a general search of Blackie's.

Nor may the INS rely upon the "plain view" exception to the warrant requirement to justify an intrusion not authorized by the warrant. In *Coolidge v. New Hampshire, supra,* 409 U.S. at 470–71, 91 S.Ct. 2022, the Supreme Court held that the doctrine of "plain view" will not justify a

seizure of evidence discovered during a legitimate entry where the discovery was anticipated in advance of the search but not mentioned in the warrant. The Court stated:

If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of "Warrants . . . particularly describing . . . [the] things to be seized."

*Id.* at 471, 91 S.Ct. at 2040. What applied to a search for "things" in *Coolidge* applies with equal force to a search for "persons" here.

As in *Coolidge,* the INS seizure here was a "step transaction" in which the ultimate seizure was the direct and intended result of the initial request to search. As the defendants concede, there could have been *no* entry without a warrant; without the entry, there would have been no opportunity to observe, interrogate, and seize fourteen employees. The warrant, however, provided for a search and no more.

In *Coolidge,* appellants challenged the validity of the seizure of evidence and its subsequent use in a criminal prosecution. The plaintiff here is not challenging the validity of the arrests made by the INS; rather, it contests the use of the "plain view" doctrine to justify a general search and "alien roundup" on its premises.

As the Court made clear in *Coolidge,* its limitation on the "plain view" doctrine is designed to protect the integrity of the warrant and particularity requirements of the fourth amendment. 409 U.S. at 469–71, 91 S.Ct. 2022. These requirements protect the interests of anyone subject to a fourth amendment intrusion, and not just the owner of property seized or the person arrested.[13] Because the INS knew at the time it

---

**13.** Although a provision of the Immigration and Nationality Act, 8 U.S.C. § 1324, makes it a crime to harbor aliens, Blackie's was charged with no offense. The statute provides specifically that employment "shall not be deemed to constitute harboring." 8 U.S.C. § 1324(a). The Court here takes no position on the appropri-

ateness of a search for evidence of a crime involving the plaintiff; however, *Zurcher v. Stanford Daily, supra,* makes plain that the fourth amendment provides the same protections for suspects and innocent third-parties who are the targets of searches.

**1088**

sought the warrant that it intended to search for and seize aliens whom it could not identify and for whom it lacked probable cause to arrest, thus significantly expanding the intrusion on plaintiff's fourth amendment interests, the INS cannot rely on the "plain view" doctrine to justify the broadened search.

The INS also contends that the warrant itself, without an assist from the "plain view" doctrine or statutory authority, authorized its November 17, 1978, actions at Blackie's. The warrant, however, fails to satisfy the requirements of the fourth amendment in two respects.

First, the warrant fails to describe the place to be searched or the persons to be seized with sufficient particularity. U.S. Const. amend. IV. It does not contain any names or even physical descriptions of the allegedly deportable aliens; it does not enumerate the persons sought or indicate whether these persons were patrons or employees. The warrant simply confers blanket authority to "locate aliens in the United States without legal authority." In short, the warrant appears to grant the searching officers a "roving commission" to search the premises, limited only by their own subjective judgments about what persons in the United States without legal authority look like. Precisely this type of unlimited discretion was condemned by the Supreme Court in *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> The requirement that warrants shall particularly describe the things to be seized

makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

Thus, this warrant failed to provide sufficiently objective guidelines for the searching officer. The warrant may fairly be analogized to those struck down by other courts that authorized searches for "obscene" materials,[14] "illegally reproduced" movies,[15] and "stolen" firearms.[16]

Second, and perhaps more important, the warrant fails to reflect adequate consideration by the magistrate of the interests of the plaintiff in avoiding or minimizing the intrusiveness of a search and seizure on its premises. The Supreme Court's recent reiterations of the magistrate's responsibility in issuing warrants to consider the effects of the search upon the privacy, safety, and convenience of third persons such as the plaintiff who might be searched have already been elaborated.[17] The requirement of magistrate consideration of these protected interests will be unenforceable and meaningless unless the magistrate leaves some trace of his consideration on the face of the warrant. The failure of the Blackie's search warrant to reflect such consideration renders it fatally defective. *Cf. Jones v. United States*, 362 U.S. 257, 267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (legality of search tested by sufficiency of magistrate's findings).

14. *Stanford v. Texas, supra; United States v. Marti*, 421 F.2d 1263 (2d Cir. 1970).

15. *United States v. Drebin*, 557 F.2d 1316 (9th Cir., 1977), *mod. on reh. on other grds.*, 572 F.2d 215, *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978).

16. *United States v. Townsend*, 394 F.Supp. 736 (E.D.Mich.1975).

The affidavits accompanying the warrant do not cure the constitutional defect, even if they are taken as incorporated into the warrant itself, *see Moore v. United States*, 149 U.S.App. D.C. 150, 461 F.2d 1236 (1972). Rather, they confirm the conclusion that the officers were not properly limited. For example, the affidavit of Russell G. Parry, Jr., *see* page 3, *supra*,

suggests that the objects of the INS search were persons with "foreign characteristics," and "foreign-style" haircuts, grooming and shoes. This is thus not a situation in which the absence of particularity is cured by context or affidavits. *See Andresen v. Maryland*, 427 U.S. 463, 479–82, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *In re Search Warrant dated July 4, 1977*, 187 U.S.App.D.C. 297, 572 F.2d 321, 326–28, *cert. denied sub nom., Founding Church of Scientology v. United States*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978).

17. *See Zurcher v. Stanford Daily, supra*, 436 U.S. at 555–57, 98 S.Ct. 1970; *Michigan v. Tyler, supra*, 436 U.S. at 507–08, 98 S.Ct. 1942; at 1085.

Without question, plaintiff had substantial fourth amendment interests at stake in the search of its business premises. Plaintiff has an obvious interest in protection of its income and its good will with its patrons. Beyond that, plaintiff has a legal duty to maintain a safe place of work for its employees and a safe environment for its invited patrons. A recent case in this circuit involving a scuffle between INS officers and an alien apprehended for deportation is warning enough that searches of a public restaurant by a squad of INS officers followed by the detention, questioning and removal of fourteen persons could be a violent event. *See Attoh v. INS*, 195 U.S.App. D.C. ——, 606 F.2d 1273 (1979). Patrons or non-deportable aliens frightened, harassed or injured by INS officers scuffling in a restaurant to remove a group of suspected aliens might well have damage claims against Blackie's, particularly if it acquiesced in the search and ancillary activities of the INS. Plaintiff has a constitutionally-protected right in its business and in the safety and convenience of its patrons and employees. This intrusion, unauthorized by warrant specifically identifying the persons to be seized, violated that right.

Thus, a warrant might appropriately authorize a search for and the arrest of a few persons when a warrant authorizing a search for and arrest of a larger number would only be appropriate at narrowly prescribed times in carefully described circumstances. This is not to say that the magistrate should have become embroiled in the details of the search and the movements of the officers thereafter. *See Dalia v. United States*, supra, 441 U.S. at 257, 99 S.Ct. 1682. But it would have been feasible for the warrant at least (1) to enumerate, state the available first names, and to describe, insofar as possible, the persons whom the INS had probable cause to believe to be deportable aliens; and (2) briefly to appraise on the face of the warrant the effect of the contemplated law enforcement activities upon non-governmental interests.

IV. Conclusion

1. A warrant was required for the November 17, 1978 search of Blackie's by INS to locate, interrogate and apprehend deportable aliens there. *Blackie's v. Castillo*, 467 F.Supp. 170 (D.D.C.1978).

2. The magistrate had authority to issue a warrant for use by INS in connection with a November 17, 1978 search of Blackie's by virtue of INS' application for a court order and Judge Aubrey Robinson's reference of that application to the magistrate.

3. Plaintiff has standing to sue on account of INS' use of an allegedly defective warrant on November 17, 1978 because the entry, search, interrogation and removal of fourteen persons, particularly in light of three earlier entries without valid warrants, injured or threatened injury to plaintiff's fourth amendment rights to conduct its business free from such unlawful intrusions.

4. This Court has jurisdiction of such a suit against official defendants under 28 U.S.C. § 1331.

5. The individual defendants are immune from any claim for damages in the circumstances here because they applied in good faith for a warrant, relied in good faith on the November 16, 1978, warrant as authority to enter Blackie's and relied in good faith on responsible legal opinion that the interrogation and seizure of persons without a warrant were authorized by statute.

6. The warrant here was defective because, although the entry planned and made by INS was for the purpose of seizing persons, it failed to so state or to describe the persons to be seized with the "particularity" required by the fourth amendment.

7. The warrant was also defective because it failed to reflect adequate consideration by the magistrate of the relative importance of the INS enforcement interest to be served by the warrant compared to the interests of plaintiff, its patrons and its employees in protection against the intrusion, inconvenience and possible injury which could result from execution of the warrant.

8. The search as conducted by the INS was unconstitutionally broad. The INS could not rely on the "plain view" exception to the warrant requirement or its statutory authority to arrest without a warrant to expand its intrusion of plaintiff's premises beyond the scope of the warrant, because the discovery and arrest of aliens not identified in the warrant was not inadvertent, but was planned, intended, and known to the INS at the time it applied for the warrant.

9. Plaintiff is entitled to an injunction restraining the official defendants, their agents, successors and persons acting in concert with them from entering plaintiff's premises in the District of Columbia, (except in exigent circumstances) [18] for the purpose of searching for, interrogating or seizing persons there without authority of either (1) an order of a judge of this Court or (2) an order or warrant issued by a magistrate which complies with the warrant clause of the fourth amendment, including the requirements that the warrant particularly describe any persons to be seized, and reflect adequate consideration by the magistrate of the effect of execution of the warrant upon interests other than INS' interest in law enforcement. Such an Order accompanies this Memorandum Opinion.

### APPENDIX A

### Exhibit A

In the United States District Court for the District of Columbia

In the Matter of
Blackie's House of Beef
and Deju Vu Cocktail Lounge
22 & M Streets Northwest
Washington, D. C.

ORDER FOR ENTRY ON PREMISES TO SEARCH FOR ALIENS IN THE UNITED STATES WITHOUT LEGAL AUTHORITY

The United States, having filed an application requesting authorization for Russell G. Parry, Jr., an Immigration and Naturalization Service officer, and/or such other immigration officers as may be designated by the Immigration and Naturalization Service, to enter the premises located at 22nd and M Streets, North West, Washington, D. C., in order to search for persons believed to be aliens in the United States without legal authority, together with both affidavits in support of that application, and the Court finding, on the basis of the affidavits, that there is probable cause to believe that there are persons who are aliens in the United States without legal authority and subject to expulsion proceedings under section 242 of the Immigration and Nationality Act of 1952, 8 U.S.C. 1252, located on or within the premises described

IT IS HEREBY ORDERED that based on the grounds set forth in the affidavits of Russell G. Parry, Jr. and pursuant to *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535 (1973) and sections 103(a), 279 and 287 of the Immigration and Nationality Act of 1952, 8 U.S.C. 1103(a), 1329, and 1357

You, Russell G. Parry, Jr., an Immigration and Naturalization Service officer and/or other such immigration officers as the Immigration and Naturalization Service may designate are authorized to enter the premises described during the daylight hours and to make such search as is necessary including, but not limited to, the search of any locked rooms on the premises in order to locate aliens in the United States without legal authority and subject to expulsion proceedings pursuant to section 242 of the Immigration and Nationality Act of 1952. In making this search, however, the Immigration and Naturalization Service officer and/or such other immigration officers as the Immigration and Naturalization Service may designate are authorized to enter the premises during the daylight hours and within 10 days of this order. A return within 10 days shall be made to this Court when the search has been completed.

18. *See generally Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408 (1978).