**UNITED STATES of America,**

v.

**Felix S. JACOB.**

**Crim. No. M–80–0237.**

United States District Court,
D. Maryland.

Nov. 28, 1980.

Richard D. Bennett, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Marvin J. Garbis, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Defendant was charged by information with subscribing to a false income tax return for the tax year ending 1975. 26 U.S.C. § 7206(1). The government's evidence to support the charge was seized during a search of defendant's law office on April 26, 1979. This case is now before the court on defendant's motion to suppress the evidence seized during that search.

## I. Factual Overview

On April 26, 1979, United States Postal Inspector James Mock swore out an affidavit in support of warrants to search defendant's law office for evidence of a scheme involving insurance fraud (Paper No. 4, Ex. A). The affidavit discusses transactions between defendant and Dr. Julius Gluck, and between defendant and certain insurance adjusters.[1] The affidavit alleges that defendant was involved in a scheme whereby Dr. Gluck would prepare false medical bills and defendant would use these bills to obtain inflated personal injury insurance settlements. It is also alleged that defendant made cash payoffs to the insurance adjusters. In reliance upon this affidavit, a United States Magistrate issued the warrant that is the subject of this motion (Paper No. 4, Ex. B)[2].

The warrant was executed by seven government agents, one of whom was a special agent with the Internal Revenue Service. The search extended over a period in excess of seven hours, and defendant and his attorney were present during the search. The inventories (Paper No. 4, Exs. B–1, B–2, and C–1) reveal that in addition to documents relating to defendant's transactions with the persons identified in the warrant, the agents seized *all* of the law office's cancelled checks for the years 1972 through 1977, entire journals and ledgers containing entries not relating to the persons named in the warrant, and a 1975 income tax worksheet. Inspector Mock's affidavit was not served with the warrant but was obtained by defendant several days after the search.

## II. The Parties' Contentions

In support of his suppression motion, defendant first contends that the warrant was "impermissibly general" in that it authoriz-ed the search for, and seizure of, evidence of "any federal crime" involving defendant and the persons named in the warrant. Defendant bases this contention on the language in the warrant authorizing the seizure of documents relating to transactions among defendant, Dr. Gluck, and the insurance adjusters which:

"... show or tend to show evidence of violations of federal criminal law including but not limited to mail fraud in violation of 18 U.S.C. § 1341."

Paper No. 4, Ex. B.

Defendant's second contention is that because the warrant was not specific as to the crimes for which evidence could be sought, except possibly as to mail fraud, the description of documents subject to seizure was necessarily overbroad. In other words, says the defendant, absent a direct connection with specific, enumerated crimes the document description could not have operated to circumscribe the discretion of the officers executing the warrant.

Finally, defendant asserts that there were insufficient facts set forth in Inspector Mock's affidavit to support the Magistrate's finding of probable cause to issue the warrant. While conceding that the affidavit may have supported a probable cause finding with respect to some crimes, defendant contends that the affidavit did not set forth facts sufficient to establish probable cause to search for evidence of all the crimes authorized by the warrant.

In response, the government first asserts that the warrant is not impermissibly general because it limited the officers' discretion to search for documents only connected with the transactions among defendant and the persons identified in the warrant. According to the government, therefore, as long as the officers are directed to search for categories of documents relating to spe-

---

1. Upon the joint motion of the government and defendant, the names of the insurance adjusters have been excised from the public record and placed under seal. See Order dated November ___, 1980 (Paper No. ___). This was done to protect the secrecy of grand jury proceedings and the privacy interests of these persons and to avoid any possible unfairness should the grand jury not ultimately return indictments against them.

2. Two warrants were issued, see Paper No. 4, Ex. C, but the evidence sought to be suppressed was seized only pursuant to the warrant attached to Paper No. 4 as Exhibit B.

cific persons and transactions, a warrant need not be specific as to the crimes for which evidence is sought.

The government's second contention is that although certain language in the warrant may appear to have authorized a search for evidence of a broad range of crimes, when that language is read in conjunction with the warrant's description of persons, transactions, and categories of documents, it actually authorizes only the search for evidence of a certain type of crime: fraud in connection with personal injury insurance claims arising out of automobile accidents. The government asserts, therefore, that when the warrant is so read a crime is specified, and whether such fraud would be ultimately mail fraud, wire fraud, or some other federal fraud crime is immaterial to the facial validity of the warrant.

The government's third contention is that since Inspector Mock's affidavit sets forth facts sufficient to establish probable cause to search for evidence of automobile insurance fraud, and the Magistrate issued the warrant based on this affidavit, the warrant was supported by probable cause.

Thus, the primary issues for decision are whether the warrant violated the Fourth Amendment's particularity requirement as to (1) the crimes for which evidence was sought, and (2) the items subject to seizure for those crimes. Also of significance is whether the warrant as ultimately construed was supported by probable cause.[3]

### III. Was the Warrant A General Warrant?

■ The primary purpose underlying the Fourth Amendment's particularity requirement is to avoid the evil associated with the general warrant; that is, "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). *See Weeks v. United States*, 232 U.S. 383, 389–91, 34 S.Ct. 341, 343, 58

L.Ed. 652 (1914); *Wallace v. King*, 626 F.2d 1157, 1160 (4th Cir. 1980). This goal is to be achieved by substituting the judgment of a neutral magistrate for that of the seizing officer as to what may be taken, and "nothing is left to the discretion of the officer executing the warrant."· *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). *See Andresen v. Maryland*, 472 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). *See generally United States v. United States District Court*, 407 U.S. 297, 316–18, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972). The gist of defendant's contentions is that this warrant vested too much discretion in the executing officers because it was not specific as to the crime.

■ It should be noted initially that the underlying affidavit, while relevant to the issue of whether probable cause to search existed, cannot be used to cure the deficiencies, if any, in the instant warrant. The rule that the generality of the warrant may be cured by the specificity of the supporting affidavit hinges on two findings: (1) that the affidavit accompanied the warrant; and (2), that the affidavit was incorporated into the warrant by suitable words of reference. *See, e. g., United States v. Gill*, 623 F.2d 540, 543 (8th Cir. 1980); *United States v. Klein*, 565 F.2d 183, 186 n. 3 (1st Cir. 1977); *Moore v. United States*, 461 F.2d 1236, 1238 (D.C.Cir.1972). It is undisputed here that Inspector Mock's affidavit was not served with the warrant, and was not available for the use of the executing officers during the search.[4] Therefore, the court may not consider the information contained in the affidavit in determining whether the warrant was sufficiently specific.

In support of their respective positions, both the defendant and the government rely on the Supreme Court's opinion in *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct.

---

**3.** Defendant also challenges the time frame set forth in the warrant and the execution of the search. In light of the court's decision on the issue of generality, these other contentions need not be addressed.

**4.** In any event, the warrant's only language of reference is as follows: "affidavit(s) having been made for me … I am satisfied … that grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)." Paper No. 4, Ex. B.

2737, 49 L.Ed.2d 627 (1976). In that case the relevant warrant language was as follows:

> "[T]he following items pertaining to sale, purchase, settlement and conveyance of lot 13, block T, Potomac Woods subdivision, Montgomery County, Maryland: [various categories of documents] showing or tending to show a fraudulent intent, and/or knowledge of the crime of false pretenses, in violation of Article 27, Section 104, of the Annotated Code of Maryland, 1957 Edition, as amended and revised, *together with other fruits, instrumentalities and evidence of crime at this [time] unknown.*"

427 U.S. at 480–81 n. 10, 96 S.Ct. at 2748 n. 10 (emphasis supplied).

The defendant in *Andresen* contended that the warrant was rendered "general" by the addition of the above-highlighted language because it permitted the search for and seizure of evidence of any crime. In rejecting this argument, the Court stated that such language had to be read in conjunction with what preceded it, and that when so read "the term 'crime' in the warrants *referr[ed] only to the crime of false pretenses with respect to the sale of Lot 13T.*" 427 U.S. at 480–81, 96 S.Ct. at 2748 (emphasis supplied). Consequently, the Court concluded that the warrant authorized the search for and seizure of evidence relevant only to a specific crime involving a particular piece of property, and was thus not a general warrant. 427 U.S. at 482, 96 S.Ct. at 2749.[5]

■ If the warrant at issue here authorized a search for, and seizure of, evidence relating only to specific crimes, then the court's inquiry would likely be at an end. This and other circuits have approved search warrants employing similar generic descriptions when the items subject to seizure were books and records not involving First Amendment considerations. *See, e. g., United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980); *United States v. Federbush*, 625 F.2d 246, 251–52 (9th Cir. 1980);

*United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *United States v. Cortellesso*, 601 F.2d 28, 30–32 (1st Cir. 1979). In all these cases, however, the warrant specified the crime or crimes for which the evidence was sought. Here, even assuming that the warrant described the categories of items to be seized with sufficient particularity the executing officers were authorized to examine them for evidence of *"violations of federal criminal law including but not limited to mail fraud in violation of 18 U.S.C. § 3141."* Paper No. 4, Ex. B (emphasis supplied). Thus, the element of specificity as to crime that was deemed essential in *Andresen* is missing from the warrant at issue in this case. *See, e. g., United States v. Giresi*, 488 F.Supp. 445, 457–58 (D.N.J.1980); *United States v. Burch*, 432 F.Supp. 961, 963 (D.Del.1977), *aff'd without opinion*, 577 F.2d 729 (3d Cir. 1978).

During oral argument the government asserted that this court's reading of *Andresen* was too narrow, and, as an example of a broader interpretation, cited *In Re Search Warrant Dated July 4, 1977, Etc.*, 572 F.2d 321 (D.C.Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978). In that case, however, the court of appeals reversed the district court's suppression order and held that the warrant was not overbroad as to the description of the items of property subject to seizure or the crimes as to which the evidence was sought. 572 F.2d at 323–324. Additionally, the court noted that the warrant incorporated by reference, and was accompanied by, a lengthy affidavit particularizing the nature of the offenses enumerated in the warrant, and the relationship of the items subject to seizure to those offenses. 572 F.2d at 326. Thus, contrary to the government's contention, *In Re Search Warrant Dated July 4, 1977, Etc.*, does not stand for the proposition that it is unnecessary to specify in the warrant the crimes for which evidence is sought. *See, e. g., Application of Lafayette Academy*, 610 F.2d 1, 4 (1st Cir. 1979);

---

**5.** Dissenting, Mr. Justice Brennan questioned how the Court's subsequent construction of the warrant's language could have operated to restrain the discretion of the executing officers. 427 U.S. at 484, 493, 96 S.Ct. at 2754 (Brennan, J., dissenting).

*Blackie's House of Beef, Inc. v. Castillo*, 480 F.Supp. 1078, 1088 n. 16 (D.D.C.1979).

■ The Fourth Amendment's requirements of probable cause and particularity are inextricably intertwined. Legitimate expectations of privacy, *see Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), are protected by (1) reserving the probable cause determination to a neutral magistrate rather than one "engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), and (2), by particularizing the probable cause determination in the warrant. Such particularization limits the intrusiveness of the search by circumscribing the discretion of the executing officers. *Coolidge v. New Hampshire*, 403 U.S. at 467, 91 S.Ct. at 2038.

■ For a probable cause determination to be meaningful there must be a nexus among (1) criminal activity, (2) the things to be seized, and (3) the place to be searched. 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(d) at 704 (1978). *See* Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 358 (1974).

■ To uphold the validity of this warrant would negate the purposes underlying a neutral probable cause determination. While the supporting affidavit appears sufficient to permit a finding of probable cause as to the categories of items described in the warrant, and the place where they may be found, it does not establish probable cause to search for evidence of an infinite variety of federal crimes. Yet, on its face, the warrant purports to authorize the search for evidence of any federal crime as long as the evidence "relates" to the persons or transactions identified in the warrant. The failure to match probable cause as to a specific crime with the warrant's authorization to search is a sufficient reason to invalidate a warrant. *See Application of Lafayette Academy*, 610 F.2d at 3.

■ The government maintains, however, that a close reading of the instant warrant discloses that it authorizes a search for, and seizure of, evidence only as to federal fraud crimes involving personal injury insurance claims arising from automobile accidents. This argument is troubling for several reasons. First, the court would have to speculate that the Magistrate found probable cause to exist for "certain" fraud crimes even though these crimes are not identified in the warrant. Second, it requires the court to assume that the executing officers interpreted the warrant as does the government's attorney who is trained in the law and has had several months to prepare his narrowing interpretation. Yet, even if the officers had seized fortuitously only those records for which probable cause as to a specific crime existed, this would not validate a facially overbroad warrant. *See United States v. Abrams*, 615 F.2d 541, 544 (1st Cir. 1980).

■ This court recognizes that when it comes to "particularly describing" those items thought to be evidence of a crime, especially in fraud and conspiracy cases, the government is often faced with an almost impossible burden. *See United States v. Abrams*, 615 F.2d at 547, 548 (Campbell, J., concurring). For this reason the Fourth Circuit has adopted the rule that "there is a practical margin of flexibility permitted by the constitutional requirement for particularity in the *description of items* to be seized." *United States v. Torch*, 609 F.2d at 1090, *quoting United States v. Dennis*, 542 F.2d 743, 745 (8th Cir. 1976) (emphasis supplied). The constitutionality of this standard with respect to *items* to be seized was recognized, at least implicitly, in *Andresen*. 427 U.S. at 482–84, 96 S.Ct. at 2749–50.

When it comes, however, to the specificity required for the description of the crimes for which evidence is sought, particularly after a lengthy investigation, the government need not be afforded such latitude. If the government cannot state with some measure of particularity, and the warrant cannot reflect, what crimes there is probable cause to believe the evidence sought is associated with, then a warrant may not constitutionally issue. Without a description of the crime or crimes alleged to be involved there can be no meaningful review of the magistrate's probable cause determi-

nation, and the executing officers are left to decide for themselves what may be seized. For the reasons set forth above, the court holds that the warrant authorizing the April 26, 1979, search of defendant's law office was a general warrant, and thus violative of the Fourth Amendment. As such, all fruits of the search must be suppressed.[6]

Accordingly, it is this 28th day of November, 1980, by the United States District Court for the District of Maryland, *ORDERED*:

Defendant's motion to suppress is GRANTED.

---

**6.** Since the court holds that the warrant is a general warrant, the severance doctrine is inapplicable.