911 F.2d 722
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Felix S. JACOB, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 90-7018.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1990.
Decided Aug. 3, 1990.
As Amended Aug. 6, 1990.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-90-249-S; CR-80-237-M)
 Peter Max Zimmerman, Towson, Md., for appellant.
 Geoffrey Robert Garinther, Assistant United States Attorney, Baltimore, Md., (argued), for appellee; Breckinridge L. Willcox, United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and MURNAGHAN and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Felix Jacob appeals from a district court order denying his petition coram nobis. We agree with the lower court that this is not an appropriate case for coram nobis relief and affirm.
 
 I.
 
 2
 In 1979 the United States Attorney's office received information implicating Jacob, an attorney, in a scheme to submit fraudulent claims to certain insurance companies to inflate out-of-court settlements. The government secured a warrant to search Jacob's law offices. The warrant authorized the seizure of financial records for the period January 1, 1972, through December 31, 1977, that related to claims for bodily injuries arising out of automobile accidents involving certain clients represented by Jacob and treated by a Dr. Gluck or with claims against persons insured by three specified insurance companies.
 
 
 3
 During the course of the search, government agents seized boxes of cancelled checks. Agents sought to match the cancelled checks with records which reflected the amounts disbursed in the settlement of eighty-eight cases coming within the limitations of the warrant.
 
 
 4
 While organizing the checks, government agents discovered a "double check" pattern.[1] From their experience with the investigation, agents knew that "double checking" was used to conceal insurance fraud. These particular checks did not relate to the classes of clients described in the warrant. However, the agents removed the checks from the boxes because they were evidence of other crimes committed by Jacob. Agents interviewed the clients who endorsed these checks to determine whether Jacob had retained the proceeds. This investigation confirmed the government's belief in the illegal activity revealed by the checks.
 
 
 5
 Based upon the seized information, Jacob was charged with filing a false individual federal tax return for the tax year 1975. He entered into a pretrial agreement which provided that he would contest only the legality of the search. Jacob and the prosecutor agreed that Jacob had filed a false income tax return and that, should the legality of the search be upheld, Jacob was guilty. The government agreed that it would dismiss the income tax charge if the seizure of evidence was determined to be illegal.
 
 
 6
 At trial, the district court held that the search warrant was impermissibly general and suppressed the seized evidence. United States v. Jacob, 502 F.Supp. 1221 (D.Md.1980). The government appealed, and this court reversed, finding that the warrant was specific enough to meet the fourth amendment's particularity requirement. We remanded the case to the lower court for a determination of whether the seized evidence was within the scope of the warrant. See United States v. Jacob, 657 F.2d 49 (4th Cir.1981), cert. denied, 455 U.S. 942 (1982).
 
 
 7
 On remand, Judge Miller found that the evidence was in plain view. He held that the agents had probable cause to seize and remove the unrelated checks based on a pattern of "double-checking" activity which was discovered inadvertently and was immediately apparent, within the "plain view" doctrine of Coolidge v. New Hampshire, 403 U.S. 443 (1971). This court affirmed without opinion in United States v. Jacob, 718 F.2d 1093 (4th Cir.1983), cert. denied, 466 U.S. 903 (1984).
 
 
 8
 Having served his sentence,[2] Jacob now seeks a writ of error coram nobis. He argues that if he had been tried after the Supreme Court decided Arizona v. Hicks, 480 U.S. 321 (1987), he would not have been convicted. In Hicks, the Supreme Court held that probable cause is required for the search and seizure of an item coming into plain view in the course of a search of a private area.
 
 
 9
 Jacob does not contest the seizure of the checks themselves. Rather, he claims that Hicks "brought logically into focus ... the necessity to apply the seizure-search analysis foreshadowed in Arkansas v. Sanders, [442 U.S. 752 (1979),] (the "automobile exception" case) and articulated in Justice Stevens' concurring opinion in Texas v. Brown, [460 U.S. 730 (1983) ]." Jacob reads these cases to require the government to obtain a warrant before it conducts any investigation of evidence seized in plain view. For example, if the government seizes a gun in plain view, Jacob maintains that the cases require the government to obtain a warrant before firing it for testing purposes.
 
 III.
 
 10
 The lower court correctly determined that this is not an appropriate case for coram nobis relief. Coram nobis relief is available only to correct errors of the most fundamental character. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir.1988), cert. denied, 109 S.Ct. 3190 (1989). We awarded coram nobis relief in Mandel because the petitioner had been convicted based upon conduct which did not amount to a crime. Jacob does not challenge his guilt. Rather, he only challenges the legality of a search/investigation. Even if there was some merit to Jacob's novel fourth amendment claim, we would not award coram nobis relief because Jacob's argument does not describe an error of the most fundamental kind.
 
 IV.
 
 11
 For the reasons stated above, we affirm the district court order.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 The practice of "double checking" in this case typically involved four checks which were drawn after the settlement of a case involving bodily injuries arising out of automobile accidents. The doctor involved in the case would receive one check. The check would be for an amount less than that reflected on the medical bill. Another check representing the legal fee would go to Jacob. The final two checks would be for the balance of the proceeds of the settlement. They would be drawn to the client; however, the client would only receive the proceeds of one of the checks. The other check would represent the difference between the medical bill and the amount actually paid to the doctor. Jacob retained the proceeds from this check. This money was excess cash for Jacob which he sometimes used to pay off insurance adjusters
 
 
 [2]
 At oral argument, counsel for Jacob advised us that Jacob was disbarred as a result of this conviction and is still unable to practice law. Hence, he has shown a "possibility of collateral legal consequences" as required for coram nobis relief. See Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir.1987)